DRYDEN et al. v. OCEAN ACCIDENT & GUARANTEE CORPORATION, LIMITED.

No. 8310.

Circuit Court of Appeals, Seventh Circuit.

Oct. 26, 1943.

292

Louis H. Strasser, of St. Louis, Mo., and Henry A. Converse, of Springfield, Ill., for plaintiff-appellee.

Verlie Eastman & Schlafly and Emerson Baetz, all of Alton, Ill., for Hugh C. Blaske, defendant and third party plaintiff-appellee.

Joseph N. Hassett, of St. Louis, Mo., and Marks Alexander, of Springfield, Ill., for Ocean Accident & Guarantee Corp., third party defendant-appellant.

Emerson Baetz and Verlie, Eastman & Schlafly, all of Alton, Illinois, for third party plaintiff-appellee (insured).

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

A seaman sues his employer for money expended in obtaining a cure and maintaining himself while unable to work as a result of injuries incurred in the destruction of his employer's boat by fire. The defendant-employer seeks to have its insurer defend the cause and pay such judgment as might be rendered. The insurer resists such liability on the ground that the recovery sought was for "maintenance and cure"—damages which arise from an employer-employee *contract* relation, and which are therefore not consequent upon a "liability imposed by *law*" which was the coverage provided for by the insurance policy. But the trial court concluded, on cross-motions by insured and insurer for summary judgment, that the insurer had a duty under its policy to defend the instant suit, it is from this ruling that the insurer appeals.

The issue here presented is simply one of construction of the insurance policy involved. A more detailed statement of the pleadings is set forth below.[1]

Appellant's argument stems from a strict and technical construction of the policy's phrase "liability imposed by *law*." It ar-

---

[1] The plaintiff, Dryden, sued defendant, Blaske, for $5,000. He alleged that on October 26, 1940, the tow boat "Floyd H. Blaske" was destroyed by fire and in jumping to escape the fire he fractured both ankles. He was hospitalized and remained in a plaster cast until April, 1941. He was unable to do any work (with the exception of one five-day period) until July 29, 1941. He enumerates his items of damage, including past and future medical costs, personal property loss, and cost of maintenance which he estimated to be the same as the wages he lost.

Defendant Blaske filed a third party complaint against the insurer setting forth excerpts of the insurance policy on which it predicated the asserted liability of the third party defendant.

Thereupon the insurer moved to dismiss the third party complaint, but its motion was denied. It then filed an answer to the third party complaint wherein it denied any liability to protect the employer against a suit by its employee for damages in the nature of "maintenance and cure." Insured then moved for a summary judgment awarding it declaratory relief, i. e., that insurer be required to defend the suit and pay the resultant judgment. The insurer filed a cross motion for summary judgment and declaratory relief denying any responsibility on its part to defend the suit.

The trial court granted the insured's motion for summary judgment. The court held for the insured that insurer had the duty to defend the suit and would be liable for such judgment as might be entered.

gues that the seaman's right to maintenance and cure being incident to the contract relation of employment, there is here sought to be enforced a pure *contract* right, not a right correlative to a "liability imposed by law," or an action ex delicto due to negligence. With this argument we are unable to agree.

Concededly an employee-employer relationship is a contractual one. Probably many of the details of that relationship—wages, hours, etc., are fixed by specific contract provisions and are express contractual rights. But the right here sought to be enforced by the seaman was not founded on a "meeting of the minds"—it was inexorably attached by ancient and established maritime *law* to every seaman's contract of employment. The parties had no choice in the matter. It was a duty superimposed by *law* coincidental with the formation of the contractual relation. The seaman could not contract against it—his or his employer's will is powerless to destroy it. This aspect alone reflects the true nature of the right here sought to be enforced. It is a right which the maritime law, in the wisdom of experience, found necessary and just, for the complete protection of seamen, whom maritime law has treated as "wards of admiralty."

■ Both parties have cited the clarifying and exhaustive opinion of Justice Cardozo in Cortes v. Baltimore Insular Line, 287 U.S. 367, 53 S.Ct. 173, 174, 77 L. Ed. 368, for support of their respective positions. We feel the discussion[2] there forecloses any doubt as to the source of the employer's duty to the seaman for "maintenance and cure" as being a right whose source arises in *law*, although applicable only to persons standing in the contractual relation of seaman and employer.

Justice Cardozo stated: "The duty * * * [to provide the seaman with maintenance and cure] *is imposed by the law itself* as one annexed to the employment." The later case of Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 527, 58 S.Ct. 651, 653, 82 L.Ed. 993, calls the liability for maintenance and cure the *"ancient duty* of a vessel," and the case of O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 41, 63 S.Ct. 488, 491, 87 L.Ed. ——, states, "From its dawn, the maritime law has recognized the seaman's right to maintenance and cure for injuries suffered in the course of his service to his vessel, * * *." See also Loverich v. Warner Co., 3 Cir., 118 F.2d 690, 692, for a statement similar to that in the Cortes case.

Since we conclude that the coverage of the policy was sufficiently broad to comprehend the liability here sought to be enforced, the only questions which remain are (a) was that coverage lost by express exception appearing later in the policy, or (b) through contemporaneous construction of the parties. We think such coverage was not abrogated by either circumstances.

■ The insuring clause is a very broad one—"To Indemnify this Employer against loss by reason of the liability imposed upon him by law for damages * * *." This coverage appears in the main body of the policy. At the close of the policy (in addition to many endorsements) there are

[2] "A remedy is his also if the injury has been suffered through breach of the duty to provide him with 'maintenance and cure.' The duty to make such provision is imposed by the law itself as one annexed to the employment. * * * Contractual it is in the sense that it has its source in a relation which is contractual in origin, but given the relation, *no agreement is competent to abrogate* the incident. * * * The question then is to what extent the ancient *rule* has been changed by modern statute. * * *

"The argument is pressed upon us that the care owing to a seaman disabled while in service is *an implied term of his contract*, and that the statute cannot have had in view the breach of a duty contractual in origin for which he had already a sufficient remedy under existing rules of law.

"We think the origin of the duty is consistent with a remedy in tort, since the wrong, if a violation of a contract, *is also something more*. The duty, as already pointed out, is one annexed by law to a relation, and annexed as an inseparable incident without heed to any expression of the will of the contracting parties. For breach of a duty thus imposed, the remedy upon the contract does not exclude an alternative remedy built upon the tort. * * * So, in the case at hand, the proper subject of inquiry is not the quality of the relation that gives birth to the duty, but the quality of the duty that is born of the relation. * * * There was to be * * * [no remedy] we are told, if he was killed for lack of food or medicine, though the one duty equally with the other was *attached by law* to the relation."

294

"Declarations" containing many paragraphs. In one of these paragraphs is set forth a table containing the item "Classification of Operations," subsection "1(a) Tugboats—all kinds. No. 7020." It is this figure of No. 7020 which constitutes the alleged exception. The affidavit of John McBain sets forth what "Code 7020" is, i.e.: "Code 7020. A Standard Workmen's Compensation and Employers' Liability policy shall be used with limitation of the liability for damages to specified amounts. This form of policy provides coverage for the following obligations: (1) Such legal liability as may exist to pay workmen's compensation. * * * (2) Liability to pay damages under the various laws of negligence * * *, excluding any liability imposed upon the employer arising from any obligation to provide transportation, wages, maintenance and cure."

It would be a harsh conclusion to hold that a broad and general coverage against loss, contained in the main body of the insurance policy should be whittled down to a liability for workmen's compensation liability simply by the use of the figure 7020 appearing in a table annexed to some declarations, themselves annexed to the policy. Perhaps insured knew what "7020" meant, perhaps not. But even the document "7020" is not an agreement; it seems to be a statement of policy, and contemplates future action, not present. Public policy requires that exceptions nullifying liability be more patent to an insured than the vague embodiment in a numeral appearing in a remote place in an appendage to the policy.

■ (b) Insurer contends that insured's letter[3] of January 6, 1940, in regard to other claims, is a contemporaneous construction of the policy, binding on all parties.

It is claimed that the insured recognized that the coverage of the policies was limited to workmen's compensation claims and did not cover maintenance claims. As we read this letter, it is more an acknowledgment of insured that the insurer has so construed the policy. In fact, the letter pleads for payment of two small claims for doctor's expenses of seamen. True, it expresses the fact that insurer has refused to pay such claims, but still seeks reimbursement therefor on the ground that prior insurers had recognized such claims. Insured also states that it did not intend to press large claims of this kind—for the purpose probably of seeking to get those claims paid, and letting the future take care of itself. It was pleading its cause as best it knew how, and should not now be estopped to continue to claim that such injuries were within the coverage of the policy. That there was not a concord of view in the construction of this policy is borne out by the last paragraph of the letter—"We will appreciate it if you will

---

[3] Blaske Boat & Barge Yards
Alton, Illinois
January 6, 1940.
Ocean Accident & Liability Insurance Co.
St. Louis Missouri
Gentlemen:
Through the last year, during which time your Company has been insuring us, covering namely our compensation requirements both in Missouri and Illinois along with the requirements included in the Longshoremans Act, our Company has had several claims, two of which occurred on our towboats while the vessels were operating at various points. Both of these claims involved doctors services, and one caused the employee to remain at home for several weeks.

Although these claims were comparatively minor, your company found it necessary to disclaim any liability, since the accidents occurred on vessels while operating and technically the policies did not cover compensation in such cases.

In the past it has always been the practice of other companies carrying our insurance to pay these small claims, since there are very few employees working on shore or in our yards and claims are at a minimum. This is only fair considering the fact that the expense involved in sending a man to a Marine Hospital is often greater than having a local doctor take care of the injury.

It is not our intention to insist that your Company enlarge our policy or pay exceptionally large claims, however we pay a percentage on the salaries of the men working on the boats even to the extent of paying on the estimated room and board, another item never before necessary. With these facts in mind we consider it only fair that these small claims, mainly those of Fred Carter and Erbert Gaskill be accepted as compensation cases. The doctor's bills for these claims are still pending.

We will appreciate it if you will consider our view in this matter and work with us accordingly in clearing these claims.
Very truly yours,
(Signed) H. C. Blaske.

consider *our* view in this matter and work with us accordingly in clearing these claims."

 Insurer also complains that the third party complaint should have been dismissed because under paragraph Seven G of the policy "No action shall lie against the Company to recover upon any claim or for any loss * * * unless brought *after* the amount of such claim or loss shall have been fixed and rendered certain either by final judgment against this Employer after trial of the issue * * *." Since, they allege, there is yet no final judgment, no suit lies against them. Such a construction would appear logical were it not for the fact that the same policy, in paragraph Three thereof, imposes the liability on the insurer "To Defend, in the name and on behalf of this Employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor, * * *."

The judgment of the District Court is affirmed.