**SAFEWAY MOVING & STORAGE CORPORATION**

v.

**AETNA INSURANCE COMPANY, etc., et al.**

**Civ. A. No. 5849–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 15, 1970.

A. Andrew Giangreco, Alexandria, Va., for plaintiff.

Norman F. Slenker, Arlington, Va., for defendants.

MERHIGE, District Judge.

### MEMORANDUM

The plaintiff, a Virginia corporation with its principal place of business in Alexandria, Virginia, brings this diversity action against Aetna Insurance Company and New Amsterdam Insurance Company, now known as Security Insurance Group of Hartford, both Connecticut corporations authorized to do business in Virginia. The amount in controversy is in excess of Ten Thousand ($10,000.00) Dollars. Jurisdiction is conferred by virtue of Title 28 U.S.C. A. § 1332.

In 1967 Safeway was, and had been for some time prior thereto, engaged in the business of moving and storing household goods, primarily if not exclusively for employees of the United States Government, under three contracts with the government whereby plaintiff agreed to furnish facilities and services for the safe and proper storage of household goods of military personnel pursuant to service orders issued by the government.

Two of the government contracts provided in part as follows:

8. LIABILITY FOR CARE OF GOODS

(a) Except as hereafter provided and notwithstanding payment for storage and other services hereunder, the Contractor shall be liable in an amount not exceeding $50 per article or package listed on the warehouse receipt or inventory form for any loss or injury to household goods deposited with it caused by its failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but the Contractor shall not be liable for any loss or injury to household goods which is caused by acts or conditions beyond its control and without its fault or negligence.

A third contract contained the following:

SP-10. *Liability.* The contractor agrees to indemnify the owner for any loss of or damage to the owner's property arising from any cause whatsoever while in the contractor's possession and for any latent damage caused by defective packing, either within or subsequent to the period covered by the contract. Liability under this provision is limited to 60 cents per pound per article. (Maximum value recoverable shall be based not on the weight of the lost or damaged article but on the gross weight of the container in which it is packed. Article is defined as: each shipping piece or package, or item not inclosed in a packing unit within a household goods shipping container shall constitute one article.) In the event that damage is caused by contractor's negligence he shall be responsible for the depreciated replacement value of the article. The contractor shall make prompt payment to the owner of the household goods for any loss or damage for which the contractor is liable.

All three contracts contained what is apparently a standard clause for government contracts of this nature and reads as follows:

17. DISPUTES

(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and

conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Secretary. The decision of the Secretary or his duly authorized representative for the determination of such appeals shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.

(b) This "Disputes" clause does not preclude consideration of law questions in connection with decisions provided for in paragraph (a) above: Provided, that nothing in this contract shall be construed as making final the decision of any administrative official, representative, or board on a question of law.

In April, 1964, Cecil Sills, one of the two sole shareholders of Safeway, the other being his wife, contacted one A. Melville Cox, a local insurance agent, and requested a policy of insurance on the corporation's vehicles, it appearing from the evidence that the procurement of this policy, obviously a liability policy, was to take the place of a prior liability policy which apparently was expiring within a day or two thereafter. In short, Cox arranged for the procurement of the necessary motor vehicle liability policies and, as a follow-up to that, Cox secured the business of Safeway in reference to the issuance of fire policies, each in the amount of $50,000.00, issued by the respective defendant insurance companies.

While the policies of insurance were each in full force and effect a fire occurred on December 12, 1965, causing extensive damage to loads of household goods stored by plaintiff corporation under its contracts with the government.

Cox, the insurance agent, was immediately advised of the fire, and the defendant insurance companies caused an investigation of same to be made by an independent adjustment company.

Plaintiff notified the defendants of the fact that the government was making a claim against it. The companies, however, took the position that there was no negligence on the part of their insured and that they were under no obligation to defend or participate in any administrative procedures which were called for under the respective contracts of the plaintiff with the government.

The companies were not represented at any of the administrative hearings, although at the ultimate one conducted before the Armed Services Board of Contract Appeals defendants' counsel was present but did not participate. The matter reached the Appeals Board through the efforts of the plaintiff's independently retained counsel. Plaintiff corporation had the services of their own counsel before the administrative board, for which he was paid a fee of $1,500.00, which the Court finds to have been reasonable.

It was stipulated by the parties that the administrative hearings were all held in accordance with the terms of the contracts existing between the government and the plaintiff, and the Appeals Board sustained previous findings of its hearing officers of negligence on the part of the plaintiff, Safeway, and the damages were fixed at $330,563.38, which was subsequently reduced to $203,784.81.

As a consequence of the administrative proceedings, plaintiff's company has, for all intents and purposes, ceased operations, because the government proceeded to withhold sums allegedly due plaintiff as an offset against the $203,-784.81.

Plaintiff brings this suit seeking recovery of the maximum limits of cover-

age as shown by the policies and further seeks damages flowing from the bad faith and/or negligence of the defendant in its failure to defend the suit in the administrative hearings.

The defendants, on the other hand, argue essentially that the contractual agreements between the plaintiff and the government removed the issue of liability and the duty to defend to a forum excluded by the language of the insurance contract, with the consequence being a negation of both the duty to pay upon the establishment of liability against the plaintiff and the duty to defend the plaintiff in the administrative proceedings. In connection with this argument, the defendants rely on various phrases contained in the respective insurance contracts such as. "[O]n the liability of the Insured as determined and imposed by law * * * ; " *"Exclusion*: This insurance does not apply to liability assumed by the Insured under any contract or agreement. ; " *"Assistance and Cooperation of the Insured*: * * * The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expenses."

At the outset, the Court takes note that neither the plaintiff nor defendants take issue with the establishment of liability predicated on the findings made during the administrative proceedings. That the plaintiff is legally liable under the government contracts is no longer open to dispute, at least in the posture of the case as it now exists. See United States v. Utah Construction & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L. Ed.2d 642 (1966) ; United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963); Fairmont Aluminum Co. v. Commissioner, 222 F.2d 622 (4th Cir.1955).

The question presented for this Court's attention then is merely that of the contractual obligation of the defendants to the plaintiff under the policy, if any, for the liability of the plaintiff sustained in the administrative proceedings in light of the various clauses and phrases contained in the insurance contracts.

When construing a contract of insurance, the courts are bound by certain basic rules of construction. Obviously the most basic function of a court is "to construe the language of the contract as written, and * * * [not] * * * make a new contract for the parties different from that plainly intended * * *." Pilot Life Insurance Co. v. Crosswhite, 206 Va. 558, 145 S.E. 2d 143, 146 (1965). See also, Eureka-Security Fire & Marine Insurance Co. v. Maxwell, 276 F.2d 132 (4th Cir.1960). The rule thus fixing the bounds within which this Court must base its ultimate conclusion is dictated by the duty to insure that the intention of the parties, evidenced by the written contract, is determinative. The construction of the complete document as an entity, whenever possible, is required in reaching this conclusion. See e.g. Welborn v. Wyatt, 175 Va. 163, 7 S.E.2d 99 (1940); Collins v. Metropolitan Life Insurance Co., 163 Va. 833, 178 S.E. 40 (1935). The one qualification to the foregoing rule is that if it be determined that an ambiguity exists in the insurance contract, such ambiguity should be resolved in a light most favorable to the insured. See, *e.g.*, Nationwide Insurance Co. v. Hill, 307 F.Supp. 801 (W.D.Va.1969) ; Aetna Insurance Co. v. Kaplan, 206 Va. 1, 141 S.E.2d 725 (1965) ; Combs v. Hunt, 140 Va. 627, 125 S.E. 661 (1924).

With these guidelines in mind, the Court notes that the language of coverage on the front of each policy purports to cover "the liability of the Insured as determined and imposed by law." Attached to the standardized portion of the policies is a liability Insurance Form 507–Virginia, which indicates the extent of coverage as follows:

The Company agrees with the named Insured to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of the injury to or destruction of such property, including the loss of use thereof, caused by

accident and arising out of fire, subject to the following provisions:

■ The Court construes the words "imposed by law" to describe that *kind* of liability which the insurer agreed to insure against, and does not, as defendants urge, construe such language as qualifying that forum in which the defendants agreed to become liable if liability were ultimately established. For instance, in Dryden v. Ocean Accident & Guarantee Corp., 138 F.2d 291 (7th Cir.1943), the Court was called upon to construe the phrase "liability imposed by law." The defendant insurance company refused to defend an action by an employee against his employer for "maintenance and cure" damages sustained as a result of the destruction of the employer's boat by fire. The defendant in that case argued that the liability arose from the employer-employee contract and was therefore not liability imposed by law, but merely the enforcement of a contract right. The Court found, however, that that *kind* of liability (for which the defendant was ultimately held responsible) arose in light of "a duty superimposed by law (ancient and established maritime law) coincidental with the formation of the contractual relation." *Id.* at 293. See also, St. Paul & K. C. S. L. R. R. v. U. S. Fidelity & Guaranty Co., 231 Mo.App. 613, 105 S.W. 2d 14 (1937); Barrett v. Employers' Liability Assurance Corp., 118 F.2d 799 (5th Cir.1941).

Therefore, because, as previously stated, the defendants challenge neither the legal liability of the insured under the government contracts nor the fact that the basis on which the liability is predicated would invoke the duty of the defendants under their contractual obligation to the insured, the Court, if it were to read into the language of coverage an *exclusion* of certain forums in which the question of plaintiff's liability could be determined, would be adding to the contract elements which the facts indicate the parties did not intend. Such conclusion is reached in light of the Court's finding primarily that Cox, the agent, was cognizant of the fact that the plaintiff corporation did government work, knew of the existence of the government contracts, and, in fact, caused to be issued certain certificates to the United States Army, showing that Sills' corporation had certain policies in effect and, in addition, forwarded the necessary certificates to the Interstate Commerce Commission as required by reason of Safeway's interstate operation.

Next, attention is focused on the language contained in the "contractual exclusion clause."

At the most, such clauses are generally construed as seeking to exclude from coverage liability which, in the absence of contract between an insured and a third party, would not ordinarily exist. Compare United States Fidelity & Guaranty Co. v. Virginia Engineering Co., 213 F.2d 109 (4th Cir.1954), with Union Paving Co. v. Thomas, 186 F.2d 172, 173 (3d Cir.1951).

■ The Court here is not faced with the ambiguities which the interpretation of that clause presents in a proper case.[1] The liability imposed on the plaintiff by the Armed Services Board of Contract Appeals was predicated on the Virginia law of bailments. Indeed, assuming no contract between the plaintiff and the government, the plaintiff would still have owed that degree of care which is ordinarily imposed on bailees under the circumstances here existing. Neither party disputes this.

Consequently, the structure of the "contractual exclusion clause" has not been brought into play, and the clause does not excuse the defendants from their contractual liability.

Nor does the "Assistance and Cooperation Clause" excuse the defendants from performing their contractual obligation.

1. *See* Lumbermen's Mutual Casualty Co. v. Town of Pound Ridge, 362 F.2d 430 (2d Cir. 1966), and cases cited therein.

Read in its entirety, the clause provides that:

> The Insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The Insured shall not except at his own cost, voluntarily make any payment, assume any obligation or incur any expense.

■ The purpose of the "cooperation clause," as established by the cases, is to provide a defense to an insurer against a policy claim where the insured "has failed to furnish proper assistance to the company in its defense of the suit or has entered into collusion with the plaintiff to establish liability unfairly." State Automobile Mutual Insurance Co. v. York, 104 F.2d 730, 734 (4th Cir.1939); see also Jordan v. Standard Mutual Insurance Co., 50 Ill.App.2d 12, 199 N.E. 2d 423 (1964). Defendants, however, urge that the clause also should be construed to raise as a defense the contractual agreement between the plaintiff and the government calling for the administrative proceedings. The Court finds no "collusion" between the plaintiff and the government which established plaintiff's liability unfairly, nor does the Court find any evidence that the plaintiff became liable voluntarily or in any manner other than under rules which the law imposes in any event; indeed, the plaintiff sought diligently to avoid any form of liability and initially sought defendants' aid in presenting such defenses. As a corollary, the Court finds that the plaintiff did not "assume" any obligation. Obligation is construed to mean liability for which one would be monetarily responsible, such responsibility being enforceable at law, under the policy, as opposed to the requirement that the respective defendants represent the plaintiff's cause before administrative bodies.

Alternatively, the Court fails to see that the breach was of a "material" nature, even assuming the cooperation clause was invoked by the forum-setting "Disputes Clause." [2]

■ To reiterate, it is not contested that notice of the ensuing administrative proceedings was given to the insurer as required by the contracts of insurance, nor that the defendants failed in any way to cooperate, and the Court has found that no obligation was assumed. While the facts as herein found, together with the insurer's failure to defend upon timely notice given, would indicate a waiver or estoppel to an assertion of defenses arising under the cooperation clause, see Indemnity Insurance Co. of North America v. Forrest, 44 F.2d 465 (9th Cir.1930). The Court does not so hold, but only seeks to point up a lack of evidence establishing any wilful breach of a material matter contained in the cooperation clause, ultimately concluding, therefore, that if the clause covered or limited the forums in which liability as contemplated by the policy could be contested, the breach of such an exclusion so blatantly ambiguous as written is, at best, an immaterial breach when viewed in a light most favorable to the insured; see, e.g., Larson Construction Co. v. Oregon Automobile Insurance Co., 301 F. Supp. 1112, (D.Or.1969).

2. Virginia, in Cooper v. Employers Mut. Liability Ins. Co. of Wisconsin, 199 Va. 908, 103 S.E.2d 210 (1958), laid down the test that in order for an insurer to avail itself of a breach of the cooperation clause as a defense to a suit on a liability policy, it must be shown that the breach was wilful and went to a "material matter," although "prejudice" need not be shown. This represented the minority view, see Phillips v. Glen Falls Ins. Co., 288 F.Supp. 151 (S.D.W.Va. 1968), and, at least with respect to automobile insurance, subsequent legislation now makes it incumbent on the insurer to show prejudice when relying on a breach of this clause as a defense. Va.Code Anno. § 38.1–381, as amended, 38.1–381(a1) Supp.1968). This Court does not make a determination on the state of the law as respects a liability fire policy inasmuch as it finds no material breach under the facts before it. See also, State Farm Mut. Auto. Ins. Co. v. Palmer, 237 F.2d 887 (9th Cir. 1956).

The defendants have submitted several cases for consideration on the issue of coverage which are, in the Court's view, readily distinguishable.

In Minneapolis, St. P. & S. Ste. M. Ry. Co. v. Home Insurance Co., 55 Minn. 236, 56 N.W. 815 (1893), the court determined that the policy of insurance issued by the defendant covered only the plaintiff's common law liability as a carrier or warehouseman. Thus, where liability was established against the plaintiff by third parties under a separate contract, and such liability was not predicated on the plaintiff's common law duties of carrier and warehouseman, the court held that the basis of the plaintiff's claim against the defendant was outside the scope of the limited coverage.

In Millers' Mutual Fire Insurance Association of Illinois v. Warroad Potato Growers Association, 94 F.2d 741 (8th Cir.1938), the court held merely that the policy of insurance only covered the legal liability of the insured, and that where the plaintiff was not legally liable to third parties the protection afforded by the policy was not invoked. The same issue confronted the court in Woodhouse v. New Hampshire Fire Insurance Co., 147 N.Y.S.2d 879 (Sup.Ct.1955), cited by the defendants.

The question considered by the courts in Globe & Rutgers Fire Insurance Co. v. United States, 202 F.2d 696 (5th Cir. 1953), and Orient Insurance Co. v. Skellet Co., 28 F.2d 968 (8th Cir.1928), centered around the issue of whether or not fire insurance policies covered only the legal liability of a warehouseman or were policies which covered the property of third parties held by a bailee or warehouseman regardless of the fault of the bailee or warehouseman.

The problem facing the courts in those cases concerned the effect of limiting language of coverage in light of separate contracts made between a bailor and bailee, the effect of which would be to extend the liability coverage to both contract and tort obligations incurred by the bailee with respect to third parties.

Other cases are concerned with problems involving the right of a third party to recover for damage to his property stored with, but regardless of the fault of, the bailee.[3]

The defendants make no argument that the liability which arose against the plaintiff was not of a type insured against by the parties, nor is it argued that the plaintiff is not legally liable to the government and that such liability is not one imposed by law. Indeed, in view of the relationship between the plaintiff and the government (such relationship being known to the defendants) as contemplated by the policy, apt language could have been used to state clearly the defendants' position with respect to the forum choosing. Failing this, the plaintiff is entitled to recover for the liability which the parties insured against.[4]

The Court has already determined that the suit before the administrative board was within the policy coverage.[5]

3. See also, Michigan Fire & Marine Ins. Co. v. National Surety Corp., 156 F.2d 329 (8th Cir. 1946) and 67 A.L.R.2d 1243, et seq., for further discussion in this area.

4. It may be, of course, that the defendants' basic consternation stems from a view that they did not get a "fair shake" on the issue of plaintiff's liability in the administrative proceedings (which theory has not been urged on the Court). It is noted that the statutes which delineate the authority of the administrative process over contracts of this nature provide for adequate relief in a proper case. See 41 U.S.C. § 321, which establishes criteria limiting the role of finality afforded administrative fact determinations, and 41 U.S.C. § 322 prohibiting the application of the rule of finality with respect to questions of law.

The Court is further aware that the defendant, if disenchanted with the plaintiff's legal representation before the Board of Appeals, could itself have represented such interests under a reservation-of-rights and retained the right to have determined the issue of coverage in a later proceeding.

5. Contained in the government contracts was a strict liability provision establish-

Furthermore, the proper notice of the pending litigation was given to the defendants. The handling of the case was refused when the company determined that there was an absence of negligence on the part of the plaintiff resulting, in its view, in an absence of legal liability.

■ Not unlike the majority of liability policies, the insurance contracts contractually obligated the defendants to defend the plaintiff in actions brought against it for which liability, if established, was covered by the policy.[6] However, "the insurance policy cast upon the defendant the duty to defend, initially at least, only if the suit against its insured stated a case covered by the policy." London Guarantee & Accident Co. v. C. B. White & Brothers, 188 Va. 195, 49 S.E.2d 254, 255 (1948). Where the suit does not allege a cause which could result in a judgment within the language of coverage, the failure to defend is justified and creates no breach of contract; where, however, the allegations may result in liability which would invoke the insurance coverage, the duty to defend is likewise invoked, and a refusal to defend, although based on an erroneous assumption that the allegations do not fall within the coverage of the policy, creates a contractual breach. See, *e.g.*, Rowe v. United States Fidelity & Guaranty Co., 375 F.2d 215 (4th Cir.1967).

■ Having received the proper notice and the liability established having been within the language of coverage, the refusal to defend constituted a breach of contract on the part of the insurance company.

A breach of the convenant to defend has several consequences, see 47 Am. Jur.2d, Insurance § 1547, not the least

of which is to pay the amount of the judgment up to the policy limits, Carvin v. Standard Accident Insurance Co., 395 F.2d 326 (6th Cir.1968), and a reasonable amount expended by the insured for attorney's fees. Glen Falls Indemnity Co. v. Atlantic Building Corp., 199 F.2d 60 (4th Cir.1952). Also, the plaintiff is entitled to interest in an amount equal to the liability limits of the policy from the date which it became legally obligated to pay. American Automobile Insurance Co. v. Fulcher, 201 F.2d 751 (4th Cir.1953).

The plaintiff seeks additional damages in the sum of $2,219,000.00 for alleged loss of business in the past and in the future, resulting from the refusal to defend.

■ It has been held that liability for additional damages above the contractual limits may be assessed against an insurer who wilfully refuses to honor its duty to defend, provided that the excess damages are the natural and probable result of the breach. See, *e.g.*, Cohen v. American Home Assurance Co., 255 Md. 334, 258 A.2d 225 (1969). This Court need here make no decision on this issue inasmuch as the Court finds that more than 90% of plaintiff's business was the type of government work herein involved; that it was the policy of the government in cases of this sort to withhold all sums due until the liability owed it by the plaintiff was paid; and that, as a consequence, even if the insurance company had defended and, upon a finding of liability, had paid up to the limits of the policy, the plaintiff would still have had to cease its operations. Furthermore, there has been no evidence introduced concerning the amenability of the government to compromising its

---

ing liability against the insured in case of loss regardless of fault. Since, however, the determination of liability was based on negligence, the Court need make no determination of the effect rendered by the strict liability provision on the insurance contract.

**6.** *Defense, Settlement, Supplementary Payments: As respects the insurance afford-*

*ed by the other terms hereof the Company shall:*
a) defend any suit against the Insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; * * *.
b) * * *
c) * * *

claim in a manner sufficient to enable the plaintiff to continue its operations.

## JUDGMENT ORDER

For the reasons stated in the memorandum of the Court this day filed, and deeming it proper so to do, it is adjudged and ordered that the plaintiff recover of the defendant, Aetna Insurance Company, judgment in the amount of Fifty Thousand Seven Hundred and Fifty Dollars ($50,750.00), together with interest at six per cent per annum from December 12, 1965. It is further adjudged and ordered that the plaintiff, in addition thereto, recover of the defendant, New Amsterdam Insurance Company, now known as Security Insurance Company of Hartford, judgment in the amount of Fifty Thousand Seven Hundred and Fifty Dollars ($50,750.00), together with interest at six per cent per annum from December 12, 1965; and it shall recover from the defendants its costs expended in this action.

Let the Clerk send copies of the memorandum and this order to all counsel of record.