**NATOL PETROLEUM CORPORATION,**
Plaintiff-Appellee,

v.

**AETNA INSURANCE COMPANY,**
Defendant-Appellant.

No. 72–1004.

United States Court of Appeals,
Tenth Circuit.

Sept. 8, 1972.

Kent F. Frates, of Sullivan, Frates & Maguire, Oklahoma City, Okl., (Anthony F. Maguire, of Sullivan, Frates & Maguire, Oklahoma City, Okl., on the brief), for plaintiff-appellee.

Ronald R. Hudson, of Rhodes, Hieronymus, Holloway & Wilson, Tulsa, Okl., for defendant-appellant.

Before JONES*, SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Natol Petroleum Corporation, an oil and gas exploration company, brought an action against Aetna Insurance Company, alleging the breach of a contract of insurance issued it by Aetna. The action seeks reimbursement of sums paid by Natol in satisfaction of its contractual liability to a third party.

Natol alleged in its complaint that it incurred liability to a drilling contractor, the Grey-Wolf Drilling Company, under the terms of a drilling contract, and that such contractual liability was insured against by a policy of insurance with Aetna. Natol further alleged that it gave immediate notice to Aetna and promptly furnished a proof of loss; that Aetna undertook to adjust the loss, but thereafter denied liability and refused to compromise or pay the loss, to the end that Natol was required to settle the claim for the sum of $32,511.90. Natol in the present action seeks reimbursement from Aetna in that amount.

Aetna, by answer, denied any breach of contract and alleged, among other things, that the policy provided no coverage for Natol's liability to Grey-Wolf assumed under the drilling contract.

Following extensive discovery, the parties entered into a stipulation as to the facts. Based on such stipulation, plus certain depositions, both parties moved for summary judgment. Upon hearing, the trial court granted Natol's motion and entered judgment for it in the sum of $32,061.90. Aetna now appeals.

The first issue to be resolved is whether the insurance policy covered Natol's liability to Grey-Wolf. If there is no coverage, other matters raised on appeal need not be considered. Before setting forth the pertinent provisions of the insurance contract, brief reference to the facts as stipulated to by the parties will put the issue in focus. As indicated, Natol is engaged in the business of exploration for oil and gas. Grey-Wolf is an independent drilling contractor engaged in the business of drilling oil and gas wells. Accordingly, Natol entered into a contract with Grey-Wolf to drill a well for it in Louisiana.

The drilling contract between Natol and Grey-Wolf provided that the latter was an independent contractor who directs, controls, performs and supervises work performed under the contract. In return for drilling services, Natol agreed to pay Grey-Wolf by the foot for all drilling to a depth of 12,000 feet, and by the day for all drilling below 12,000 feet. Under the terms of the drilling contract, Natol assumed liability for all damage or destruction to Grey-Wolf's in-hole equipment while the work was on a "day work basis," the contract providing as follows:

"18.3 CONTRACTOR'S IN-HOLE EQUIPMENT—DAY WORK BASIS: Owner shall assume liability at all times while work is on a day work basis for damage to or destruction of Contractor's in-hole equipment, including but not limited to, drill pipe, drill collars, and tool joints; and Owner shall reimburse Contractor for the actual cash value of any such loss or damage provided such loss or damage

---

* Of the Fifth Circuit, sitting by designation.

is not due to the negligence of the Contractor, his agents, servants or employees."

On November 16, 1969, at an approximate depth of 12,700 feet, when the drilling operations were on a day work basis under the drilling contract, a high pressure formation was encountered. Efforts to control the pressure were unsuccessful and it became necessary to abandon a quantity of drill pipe and other drilling equipment owned by Grey-Wolf which was cemented in the hole.

Since the equipment was lost while drilling was being done on a day work basis, Grey-Wolf, under the terms of its contract with Natol, made claim against Natol for the value of its equipment which was lost when the hole was plugged. As indicated, after making demands on Aetna, Natol paid Grey-Wolf the sum of $32,061.90 pursuant to the liability assumed by it under the drilling contract. It was stipulated that Grey-Wolf's loss of drilling equipment was not caused by or the result of any negligence or other tortious conduct by Natol or any of its employees and that Natol's liability to Grey-Wolf was assumed under the drilling contract.

The policy issued Natol by Aetna is characterized by Aetna as a specialty form which expressly excludes from coverage liability assumed under a drilling contract. Otherwise, the policy essentially provides coverage for "liability imposed by law" for the destruction of or damage to specialty equipment of specialty contractors, when the equipment was used or rented to or was in the care, custody, or control of the assured. More specifically, the insuring language of the policy reads as follows:

"1. Subject otherwise to all the terms, conditions, limitations and exclusions hereinbelow set forth, the Company agrees to pay on behalf of the Assured all sums up to $100,000.00 either under Paragraph 1(A) or 1(B) or both combined, which the Assured shall become obligated to pay:

(A) By reason of the liability *imposed by law* for the destruction of or damage to property of others consisting of drilling rigs, workover equipment, tools and other property of electrical log surveyors, gun perforators, acidizers, directional drillers, fishing tool suppliers, cementers, corers and other servicing and specialty oil and gas contractors, provided that the damage or destruction occurs during the drilling, completion, or working over of a well insured hereunder and provided that such property was occupied or used by or rented to or in the care, custody or control of the Assured.

(B) By reason of the *liability which has been assumed* by the Assured under the usual and customary form of work order, service ticket and rental agreement used by oil or gas well servicing and specialty contractors (*excepting the term usual and customary form of work order, service ticket and rental agreement as used herein shall not be interpreted to include drilling contracts*) for physical loss of or damage to oil or gas well servicing and specialty equipment provided that such property was occupied or used by or rented to or in the care, custody or control of the Assured and such loss or damage is directly caused by: * * * [specified perils]." (Emphasis added.)

In arguing that the policy in question provides coverage for its liability to Grey-Wolf, Natol relies on the policy provisions appearing in the aforesaid paragraph 1(A). Specifically, Natol asserts that the phrase "liability imposed by law" includes liability imposed by contract, as well as liability imposed by the traditional forms of tortious conduct. Hence, says Natol, having assumed liability to Grey-Wolf under the drilling contract for damage to Grey-Wolf's in-hole equipment while the drill-

ing was on a "day work" basis, Aetna must now reimburse it for monies paid by it to Grey-Wolf pursuant to the drilling contract.

Aetna, in turn, asserts that the phrase "liability imposed by law" as used in paragraph 1(A) in the policy, even standing alone, does not mean nor does it include liability assumed by contract. And such conclusion is said to be bolstered by the fact that paragraph 1(B) of the policy specifically concerns liability assumed by the insured under contract, with 1(B) specifically excluding assumed liability under a drilling contract. In other words, argues Aetna, if the phrase "liability imposed by law" appearing in paragraph 1(A) includes liability assumed by the insured under contract, then there would be no need for paragraph 1(B). We agree with Aetna that from a reading of the aforesaid policy provisions the liability of Natol to Grey-Wolf is not a "liability imposed by law" within the meaning of that phrase as used in paragraph 1(A) of the policy. This, to us, is merely a case of giving the language used in the policy its normal, natural meaning. Let us examine the cases bearing on this particular matter.

In support of its position, Aetna cites Fidelity Union Casualty Co. v. Adams, 174 Okl. 487, 50 P.2d 284 (1935). In that case, the insurance policy sued upon was a casualty policy insuring the insured against loss "imposed by law" on the insured, and it was there conceded by the insured that, with an exception not here pertinent, the insurance company would not be liable for an obligation of the insured arising upon contract. In other words, liability resulting from contract was conceded not to be a liability "imposed by law." The facts in that case are admittedly dissimilar to the stipulated facts in the instant case.

In support of its position, Natol relies on Dryden v. Ocean Accident & Guarantee Corporation, Limited, 138 F.2d 291 (7th Cir. 1943), and Safeway Moving and Storage Corporation v. Aetna Insurance Company, 317 F.Supp. 238 (E.D. Va.1970), modified on other grounds, and, as modified, aff'd per curiam, 452 F.2d 79 (4th Cir. 1971). As we read those cases, however, they actually lend support to Aetna's position. Since the facts in each are similar to the facts of the instant case, we shall refer to each in more detail.

In *Dryden,* a seaman sued his employer for money expended by him in obtaining a cure and maintaining himself while unable to work as a result of injuries sustained in the destruction of his employer's boat by fire. The employer then asked his insurer to defend and the insurer resisted on the ground that the recovery sought was for "maintenance and cure" damages which arose from an employment contract and were therefore not a "liability imposed by law," which was the coverage provided for by the insurance policy. In rejecting the argument of the insurance company that the right which the seaman sought to enforce was a "pure contract right, not a right correlative to a 'liability imposed by law,' or an action ex delicto due to negligence," the following pertinent comment was made:

> "Concededly an employee-employer relationship is a contractual one. Probably many of the details of that relationship—wages, hours, etc., are fixed by specific contract provisions and are express contractual rights. But the right here sought to be enforced by the seaman was not founded on a 'meeting of the minds'—it was inexorably attached by ancient and established maritime law to every seaman's contract of employment. The parties had no choice in the matter. It was duty superimposed by law coincidental with the formation of the contractual relation. The seaman could not contract against it—his or his employer's will is powerless to destroy it. This aspect alone reflects the true nature of the right here sought to be enforced. It is a right which the maritime law, in the wisdom of experience, found necessary

and just, for the complete protection of seamen, whom maritime law has treated as 'wards of admiralty.' "

It does not appear that the insurance policy involved in *Dryden* contained a provision similar to paragraph 1(B) concerning liability assumed by the insured. Nevertheless, the plain import of *Dryden* is that a liability of the insured which is purely contractual in nature, is not a "liability imposed by law." Insurance coverage was found to exist in *Dryden* because the contract simply recognized the preexisting liability of the employer to his employee under maritime law for cure and maintenance damages. In the instant case, there was no preexisting liability imposed by law of Natol to Grey-Wolf, and its liability was purely contractual in nature.

Safeway v. Aetna, *supra,* is to the same general effect as *Dryden.* Indeed, in *Safeway, Dryden* is cited with approval. In *Safeway,* a moving and storage company had government contracts relating to the moving and storing of household goods for government employees. Those government contracts provided for the liability (and manner of payment) of the moving and storage company to the owners of the goods for damage or loss occasioned by negligence on the part of the company. A fire destroyed goods stored with the company, and pursuant to the administrative proceedings set out in the government contracts it was determined that the moving and storage company owed the owners of the goods thus destroyed a total sum of $203,784.81. It was in this setting that the moving and storage company brought suit against its insurer, and the insurer resisted on the grounds that this was not a liability "imposed by law" and, furthermore, that the policy excluded liability assumed by the insured under any contract or agreement. Citing *Dryden,* it was held that the policy in question did provide coverage and that the phrase of liability "imposed by law" described the "kind of liability" which the insurer agreed to insure against. As concerns the exclusionary language in the policy, it was declared as follows:

"At the most, such clauses are generally construed as seeking to exclude from coverage liability which, in the absence of contract between an insured and a third party, would not ordinarily exist. * * *.

"The Court here is not faced with the ambiguities which the interpretation of that clause presents in a proper case. The liability imposed on the plaintiff by the Armed Services Board of Contract Appeals was predicated on the Virginia law of bailments. Indeed, assuming no contract between the plaintiff and the government, the plaintiff would still have owed that degree of care which is ordinarily imposed on bailees under the circumstances here existing. Neither party disputes this."

It is on this basis that we conclude that the trial court erred in granting Natol's motion for summary judgment. Under the circumstances, it should have granted Aetna's motion for summary judgment.

Judgment reversed.