**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 28 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

VBF, INC.; an Oklahoma corporation;
VERNON LAWSON; BILL CODAY;
FRED SMITH,

      Plaintiffs-Appellants,

v.

CHUBB GROUP OF INSURANCE
COMPANIES,

      Defendant,

GREAT NORTHERN INSURANCE
COMPANY; FEDERAL INSURANCE
COMPANY; CHUBB & SON, INC.,

      Defendants-Appellees.

No. 99-5223

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 97-CV-535-H)

---

Bill V. Wilkinson, (Andrew P. DeCann, with him on the briefs), Wilkinson Law
Firm, Tulsa, Oklahoma, for Plaintiffs-Appellants.

John H. Tucker, (Kerry R. Lewis, with him on the brief), Rhodes, Heironymus,
Jones, Tucker & Gable, Tulsa, Oklahoma, for Defendants-Appellees.

Before **EBEL**, **ANDERSON**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Plaintiff VBF, Inc. ("VBF") filed suit against Defendants, various

insurance companies, in the United States District Court for the Northern District

of Oklahoma.[1]  Jurisdiction was based on diversity of citizenship under 28 U.S.C.

§ 1332.  VBF sought a judgment declaring that two insurance policies issued by

Defendants required Defendants to defend and indemnify VBF from a lawsuit

filed against VBF by a third party.  VBF later amended its complaint to also

allege that Defendants had violated the duty of good faith and fair dealing.  Both

VBF and Defendants filed motions for summary judgment.  The district court

concluded that Defendants had no duty to defend or indemnify because VBF's

insurance claim fell within an exclusion in the policies; the district court thus

granted Defendants' motion for summary judgment and denied VBF's motion.

VBF has appealed the grant of Defendants' motion; jurisdiction to consider the

appeal arises under 28 U.S.C. § 1291.  Because VBF's insurance claim was not

---

[1]Three individuals have also been named as plaintiffs because of their capacity within VBF.  For ease of reference, this opinion will refer only to VBF.

covered under one policy and excluded under the other policy, this court **affirms** the district court's grant of Defendants' motion for summary judgment.

## II. FACTS AND PROCEDURAL HISTORY

The district court found the following facts undisputed, and neither party contests them on appeal. VBF contracted with Foster Wheeler USA Corp. ("Foster Wheeler") to sell electrical equipment for a Foster Wheeler job in China. After VBF manufactured the electrical equipment, it was packaged by Brand Export Packing of Oklahoma, Inc. ("Brand Export"), who was a subcontractor of VBF.[2] The electrical equipment was then shipped to China.

During shipment, however, the electrical equipment was damaged because of the containers provided by Brand Export. As a result of the damage, Foster Wheeler had to replace the electrical equipment. Foster Wheeler filed a lawsuit against VBF to recover its costs in replacing the electrical equipment, asserting claims for breach of contract and breach of express and implied warranties.

VBF filed a timely insurance claim with Defendants requesting that Defendants defend VBF in the Foster Wheeler lawsuit pursuant to two insurance

---

[2]At oral argument to this court, VBF attempted to argue that Brand Export was a subcontractor employed by Foster Wheeler. This is directly contrary to the facts alleged in VBF's amended complaint and motion for summary judgment. VBF cannot on appeal revise the facts presented to the district court in its complaint and motion for summary judgment. *See John Hancock Mut. Life Ins. Co v. Weisman*, 27 F.3d 500, 506 (10th Cir. 1994); *Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992).

policies issued by Defendants to VBF. Defendants denied VBF's claim, giving two reasons. First, Defendants maintained that VBF was not entitled to coverage because the Foster Wheeler lawsuit was for breach of contract and thus not covered under the policies. Second, Defendants claimed that VBF's claim fell under a coverage exclusion for "Damage To Your Product." After Defendants rejected VBF's claim, Foster Wheeler amended its complaint against VBF to assert a claim for negligently failing to follow contract specifications. In light of Foster Wheeler's amended complaint, VBF renewed its request to have Defendants defend and indemnify VBF in its suit against Foster Wheeler. Defendants, however, have continued to reject VBF's claim.

VBF filed suit in district court seeking (1) a declaration that VBF's claim for indemnity and defense in the Foster Wheeler lawsuit is covered under the insurance policies provided to VBF by Defendants and (2) an award for the costs of defending the Foster Wheeler lawsuit and the costs of bringing the present lawsuit. VBF later amended its suit to also seek actual and punitive damages because of Defendants' alleged bad faith. Both parties filed motions for summary judgment. The district court granted Defendants' motion for summary judgment and entered judgment in favor of Defendants. The district court determined that Defendants had no duty under the policies to defend VBF in the Foster Wheeler

lawsuit because the recovery sought by Foster Wheeler from VBF is excluded from coverage by reason of the "Damage To Your Product" exclusion.

## III. DISCUSSION

This court reviews the grant or denial of summary judgment *de novo*, applying the same legal standard employed by the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. *See Cent. Kan. Credit Union v. Mut. Guar. Corp.*, 102 F.3d 1097, 1102 (10th Cir. 1996). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This court construes the evidence in the light most favorable to the nonmoving party, which is VBF. *See Cent. Kan. Credit Union*, 102 F.3d at 1102.

Under Oklahoma law the duty of the insurer to defend the insured is a contractual obligation. *See First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 302 (Okla. 1996). Thus, Defendants' duty to defend VBF in the Foster Wheeler lawsuit is controlled by the two insurance policies issued to VBF by Defendants.

Defendants issued to VBF both a commercial general liability policy (the "CGL policy") and a commercial excess umbrella liability policy (the "Umbrella

policy") that were in effect at the time of the events underlying this lawsuit. Both parties assume that Defendants' duty under the policies to defend VBF depends on whether Defendants would be required to indemnify VBF for any recovery awarded in the Foster Wheeler suit. Thus, Defendants had a duty to defend if the facts of the Foster Wheeler lawsuit gave rise to the potential of indemnification under the policies. *See id.* at 303 & nn.13-14.

In interpreting the policies, this court applies Oklahoma rules of construction. Under Oklahoma law, an unambiguous insurance policy is interpreted according to the plain meaning of the language in the policy. *See Max True Plastering Co. v. United States Fid. & Guar. Co.*, 912 P.2d 861, 869 (Okla. 1996). "Insurance contracts are ambiguous only if they are susceptible to two constructions." *Id.* If a policy is ambiguous, it will be construed against the insurer. *See id.* at 865. In addition, Oklahoma recognizes the "reasonable expectations doctrine" when the policy is ambiguous or contains "unexpected exclusions arising from technical or obscure language or which are hidden in policy provisions." *Id.* at 868. In these situations, coverage exists if the insurer or its agent has created a reasonable expectation in the insured that coverage exists. *See id.* at 864, 870. The interpretation of an insurance policy, including whether the policy is ambiguous, is a matter of law. *See id.* at 869.

**A. The CGL Policy**

The CGL policy has the following coverage language:

We will pay damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an **insured contract** because of:

       **bodily injury** or **property damage** caused by an **occurrence**;
       or **personal injury** or **advertising injury**

to which this insurance applies.

This insurance applies:

1.     to **bodily injury** or **property damage** which occurs during the policy period; and
2.     to **personal injury** or **advertising injury** only if caused by an offense committed during the policy period.

The phrases "legally obligated to pay" and "liability imposed by law" refer only to tort claims and not contract claims. *See Natol Petroleum Corp. v. Aetna Ins. Co.*, 466 F.2d 38, 39-42 (10th Cir. 1972); *Action Ads, Inc. v. Great Am. Ins. Co.*, 685 P.2d 42, 42-45 (Wyo. 1984); Lee R. Russ & Thomas F. Segalla, 7 Couch on Insurance §103:14 (3rd ed. 2000). Foster Wheeler's suit against VBF was based on contract, not tort. Although Foster Wheeler amended its complaint to assert a claim against VBF for negligently failing to follow contract specifications, this clever drafting does not change the underlying nature of the Foster Wheeler suit. *See Waggoner v. Town & Country Mobile Homes, Inc.*, 808 P.2d 649, 652-53 (Okla. 1990) (reiterating the well-established rule that tort products liability suits cannot be brought for damage to the product itself and explaining that a consumer is protected from damage to the defective product only by contract law); *Redevelopment Auth. v. Int'l Ins. Co.*, 685 A.2d 581, 589 (Pa.

Super. Ct. 1996) ("While [the third parties] have employed negligence concepts in drafting their complaint, it cannot be disputed that their claims arise out of and are based upon duties imposed upon the [insured] solely as a result of the contract between [the insured and the third parties].").

Therefore, coverage under the CGL policy exists for the Foster Wheeler claim only if the contract between Foster Wheeler and VBF is an "insured contract" under the policy. The CGL policy defines an "insured contract" as:

> 1. a lease of premises;
> 2. a sidetrack agreement;
> 3. an easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade;
> 4. any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
> 5. an indemnification of a municipality as required by ordinance, except in connection with work for a municipality;
> 6. an elevator maintenance agreement;
> 7. that part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of **bodily injury** or **property damage** to a third person or organization, if the contract or agreement is made prior to the **bodily injury** or **property damage**. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement[.]

Provision seven is the only provision arguably applicable to the contract between Foster Wheeler and VBF. The contract between Foster Wheeler and VBF contains a clause in which VBF assumes Foster Wheeler's tort liability for

claims arising from the electrical equipment. Foster Wheeler's suit against VBF, however, did not seek indemnification for Foster Wheeler's tort liability to a third party; Foster Wheeler's suit sought recovery for expenses it incurred by having to replace the damaged electrical equipment. Thus, Foster Wheeler's contractual claim was not brought pursuant to an "insured contract" under the CGL policy because it was not brought pursuant to "*that part*" of the Foster Wheeler-VBF contract under which VBF assumes the tort liability of Foster Wheeler.

VBF makes one other argument for coverage under the CGL policy. VBF argues that coverage exists under what it describes as an "endorsement for completed products operations hazard." Defendants, however, contend that "products—completed operations hazard" is not a coverage provision but rather is an exclusion to the CGL policy that can be removed through additional premiums, which they concede VBF paid. A review of the record indicates that Defendants are correct. "Products—Completed Operations Hazard" is defined in the policy to include

> all **bodily injury** and **property damage** occurring away from
> premises you own or rent and arising out of **your product** or **your
> work** except:
> a. products that are still in your physical possession; or
> b. work that has not yet been completed or abandoned.

"Products—completed operations hazard" is not, however, mentioned in the CGL policy provisions extending coverage. It is clear that Defendants are correct to

argue that "products—completed operations hazard" was an exclusion to coverage under the CGL policy that was removed by increased premium payments by VBF.

That "products—completed operations hazard" was an exclusion removed by increased premiums, as opposed to a coverage provision, has great import in this case. The removal of the "products—completed operations hazard" exclusion did not create additional coverage beyond that provided for in the coverage provisions. As discussed above, the Foster Wheeler lawsuit is not covered under the coverage provisions of the CGL policy because the Foster Wheeler suit was not based on tort or an "insured contract." Thus, the removal of the "products—completed operations hazard" exclusion is irrelevant because the CGL policy coverage provisions do not apply to the Foster Wheeler suit.

**B. The Umbrella Policy**

Defendants also issued to VBF a commercial excess umbrella liability policy. The Umbrella policy has two coverage provisions. The first coverage provision offers coverage under the same terms as the CGL policy for damages that exceed the CGL policy limits. Because there is no coverage under the CGL policy, there is no coverage under the first coverage provision in the Umbrella policy.

The second coverage provision in the Umbrella policy provides separate coverage if there is no underlying insurance. It states:

We will pay [] damages when liability is imposed on the **insured** by law or assumed by the **insured** under an **insured contract** because of **bodily injury** or **property damage** which occurs during the policy period and is caused by an **occurrence**; and we will pay [] damages when liability is imposed on the **insured** by law or assumed by the **insured** under an **insured contract** because of **personal injury** or **advertising injury** to which this coverage applies, caused by an offense committed during the policy period.

As explained above, "imposed on the insured by law" refers to tort claims; the Foster Wheeler suit was a contract claim, despite the allegation for negligently failing to follow contract specifications. *See Natol Petroleum Corp.*, 466 F.2d at 39-42; *Redevelopment Auth.*, 685 A.2d at 589. The contract between Foster Wheeler and VBF is, however, an "insured contract" for purposes of the Umbrella policy. The Umbrella policy defines an "insured contract" as:

Any written or oral agreement entered into by the **insured** in the usual course of the business operations of the **insured** in which the **insured** assumes **tort liability** of another to pay damages because of **bodily injury**, **personal injury**, **property damage** or **advertising injury** to a third person or organization where the contract or agreement is made prior to the injury.

As explained above, the contract between Foster Wheeler and VBF contains a provision in which VBF assumes Foster Wheeler's tort liability for claims arising from the electrical equipment. Though the Foster Wheeler suit was not based on the exact contract provision in which VBF assumes the tort liability of Foster Wheeler, the policy language in the Umbrella policy (as opposed to the CGL

-11-

policy) does not make this distinction.[3]  The contract between Foster Wheeler and VBF was thus an "insured contract" for purposes of the Umbrella policy.  This court will assume without deciding that Foster Wheeler's contractual suit against VBF is a suit for liability "assumed by the insured" for "property damage" caused by an "occurrence."

The Umbrella policy, however, has an exclusion for "OWNED PROPERTY AND DAMAGE TO YOUR PRODUCTS OR WORK."  The exclusion applies to

> **property damage** to or loss of use of:
> a. property owned by you or purchased by you under installment sales contract or property on consignment to you;
> b. **your products** caused by such products or any of their parts;
> c. **your work** arising out of the work or out of materials, parts or equipment furnished with such work.

"Your product" is defined as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . you . . . and containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products."  The electrical equipment fits the definition of "your product" because it was a product sold by VBF to Foster Wheeler.  For the "OWNED PROPERTY AND DAMAGE TO YOUR PRODUCTS OR WORK" exclusion to apply, the damage had to be "caused by

---

[3] The definition of "insured contract" in the Umbrella policy applies to "any written or oral agreement."  In contrast, the definition of "insured contract" in the CGL policy applies only to "that part" of a contract in which the insured assumes the tort liability of another.

such products or any of their parts." It is undisputed that the damage to the electrical equipment was caused by the containers provided by Brand Export. Thus, for the exclusion to apply, the containers must also fit the definition of "your product."

VBF maintains that the containers were not "furnished in connection" with the electrical equipment, and thus not within the term "your product," because they were provided by a subcontractor. This argument ignores the plain meaning of the policy language. "Furnished in connection" in no way implies that the containers must have been manufactured or constructed by the insured. This is evident when the entire definition of "your product" is considered. The definition differentiates between "goods or products," which must be "manufactured, sold, handled, distributed, or disposed of by" the insured, and "containers," which need only be "furnished in connection with such goods or products." The containers were clearly "furnished in connection" with the electrical equipment; the containers were thus within the term "your product." The "OWNED PROPERTY AND DAMAGE TO YOUR PRODUCTS OR WORK" exclusion applies because VBF seeks indemnification for damage to "**your products** [the electrical

equipment] caused by such products [the containers]." Because the exclusion applies, there is no coverage under the second provision of the Umbrella policy.[4]

## C. VBF's Bad Faith Claim

Oklahoma provides for tort claims against insurers when "there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981) (quotation and emphasis omitted). "There is no bad faith when the insurer's denial of a claim is based on a legitimate dispute between the insurer and the insured." *Claborn v. Wash. Nat'l Ins. Co.*, 910 P.2d 1046, 1051 (Okla. 1996). As the policies did not cover VBF's claim, Defendants' denial of the claims was clearly legitimate. Thus, VBF has no bad faith claim against Defendants.

## D. Reasonable Expectations Doctrine

VBF argues that the reasonable expectations doctrine applies in this case to preclude a grant of summary judgment for Defendants. Because the policy provisions necessary to resolve this case are unambiguous and do not contain "unexpected exclusions arising from technical or obscure language or which are

---

[4]VBF also argues that the relationship between the "your product" exclusion, the "your work" exclusion, and the "products—completed operations hazard" exclusion creates an ambiguity. This argument, however, is directed towards the CGL policy and not the Umbrella policy.

hidden in policy provisions," the reasonable expectations doctrine does not apply. *Max True Plastering*, 912 P.2d at 869.

## IV. CONCLUSION

For the reasons stated above, this court **AFFIRMS** the district court's grant of Defendants' motion for summary judgment.