HARTFORD FIRE INSURANCE COM-
PANY, Appellant,

v.

Jack TUBB, Appellee.

No. 16380.

United States Court of Appeals
Fifth Circuit.

March 29, 1957.

Leonard L. Gorin, Waco, Tex., Tirey, McLaughlin, Gorin & Tirey, Waco, Tex., for appellant.

Robert G. Carter, Jack Welch, Marlin, Tex., for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

RIVES, Circuit Judge.

This action was upon an automobile dealer's open theft insurance policy. The insurance company claimed that the loss was excluded from policy coverage by the following provision:

"7. EXCLUSIONS. The policy does not apply:

\* \* \* \* \* \*

"(d) Under any Coverage—to loss resulting from either the insured voluntarily parting with title and possession of any automobile if induced so to do by any fraudulent scheme, trick, device, false pretense, or from Embezzlement, Conversion, Secretion, Theft, Larceny, Robbery or Pilferage committed by any person including any employee, entrusted by the insured with either custody or possession of the automobile."

Tubb had purchased an automobile with financial aid from a bank which took a chattel mortgage and retained possession of the manufacturer's certificate of title to the car. He delivered the car to Chapa, another automobile dealer,

under an agreement that Chapa would sell the car for not less than $2,700.00 which would be paid to Tubb, any excess to belong to Chapa. If he did not sell the car within a reasonable time, it was to be returned to Tubb.

Chapa placed the automobile on his lot in Corpus Christi, Texas. Here one James R. Key saw it between five and six o'clock on Saturday afternoon, April 16, 1955. He offered to buy the car and the manager of the lot put a price on it of $2,950. It was agreed that Key would pay $2,000 down and the balance of $950 would be financed by the company which financed Chapa's sales. Accordingly, Key gave a check for $2,092, payable to Chapa Motor Company (the extra $92 was to cover state taxes and license and title fees), signed a promissory note for $950 payable to the finance company, and executed a chattel mortgage on the car to secure such note.

The manager did not have the manufacturer's certificate of title to the car, still in possession of the bank. Accordingly, he had Key sign a blank form application for a Texas certificate of title and promised Key that the certificate of title held by the bank would be obtained and with the application sent to Austin, Texas, where a new certificate of title would be issued to Key and mailed to him.

The manager considered the sale consummated with the above actions. He delivered the automobile to Key, who drove it away. On Monday morning, April 18, 1955, the manager called the finance company and it accepted the financing arrangement. He then went to the bank and learned that the $2,092.00 check was worthless. He notified the police but Key was not apprehended. The automobile was found in a damaged condition in Chicago, Illinois four months later and returned to Tubb.

■■ The first part of the quoted exclusion provision does not apply because Chapa did not part with *"title and possession"* of the automobile. Under Texas statute, Vernon's Ann.Penal Code, Article 1436–1, Sections 33, 52 and 53, there can be no valid sale of a motor vehicle without transfer of the certificate of title. Pacific Indemnity Co. v. Harrison, Tex.Civ.App., 277 S.W.2d 256.

In the cited case, it was held that, where a thief induced the insured to trust him with possession of the automobile during the interim that would necessarily have to transpire before the sale could be consummated the next day, the insured had "entrusted" the custody or possession of the automobile to the thief within the latter part of an identical exclusion provision. In the present case, however, the district court held that the entrustment was not "by the insured."

■ The issues as framed were, we think, broad enough to include both the entrustment by Tubb to Chapa, and that by Chapa to the thief. If the bailee, Chapa, disposed of the car in a manner not authorized by the bailment, that amounted to a "conversion." [1] Indeed, Tubb at first demanded payment for the car from Chapa, and abandoned that demand only because of Chapa's insolvency.

The word "conversion", as used in a policy covering loss sustained by "larceny, embezzlement, conversion, or criminal misappropriation", has been held to cover a conversion not violative of a criminal law.[2] In that case, the word was used in the coverage clause, and a like construction is not necessarily required *in favor* of the insurer, when the word, as here, is used in an exclusion provision.[3] Considering, however, the

---

1. Restatement of Torts, Sec. 232; Woodard v. Tatum, Tex.Civ.App., 277 S.W.2d 943; Fenley v. Ogletree, Tex.Civ.App., 277 S.W.2d 135; Stidham v. Lewis, Tex. Civ.App., 23 S.W.2d 851; Seale v. White, Tex.Civ.App., 217 S.W.2d 38; Trammell v. Whitlock, 150 Tex. 500, 242 S.W.2d 157.

2. Massachusetts Bonding & Ins. Co. v. Texas Finance Corp., Tex.Civ.App., 258 S.W. 250, 253.

3. But see, United States Ins. Co. of Waco v. Boyer, 153 Tex. 415, 269 S.W.2d 340.

fact that the coverage of this policy in the first place was for losses caused by "theft, larceny, robbery or pilferage", it seems to us that there was even more reason for the parties to intend that a loss caused by a noncriminal "conversion" was excluded. Under any horn of the several dilemmas faced by the insured, it seems clear to us that the type of loss here suffered was not covered by the insurance.

The judgment is, therefore, reversed and the cause remanded with direction to enter judgment for the defendant. 28 U.S.C.A. § 2106.

Reversed and remanded with directions.