## Richmond

Aetna Insurance Company v. Martin R. Kaplan, T/A L. & M. Motor Company.

April 26, 1965.

Record No. 5956.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*E. L. Ryan, Jr.* (*White, Ryan & Reynolds,* on brief), for the plaintiff in error.

*Stanley E. Sacks* (*Sacks, Sacks & Kendall,* on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff below, Martin R. Kaplan, filed a motion for judgment against Aetna Insurance Company, sometimes referred to herein as defendant, for $2,369.50 damages to an automobile stolen from him on April 18, 1963, which he alleged was covered by an insurance policy issued to him by Aetna. In the policy, which was introduced in evidence, Aetna agreed: "To pay for loss of or damage to the automobile, hereinafter called loss, caused by theft, larceny, robbery or pilferage."

Aetna filed its grounds of defense in which it asserted that an exclusion clause in the policy expressly relieved it of liability in the circumstances of the taking of the automobile. The clause relied on was in these words:

"EXCLUSIONS The policy does not apply: * *
(e) under any coverage, to loss resulting from the insured voluntarily parting with title to or possession of any automobile, if induced to do so by any fraudulent scheme, trick, device, false pretense or from embezzlement, conversion, secretion, theft, larceny, robbery or pilferage committed by any person entrusted by the insured with custody or possession of the automobile."

At the conclusion of the plaintiff's evidence the defendant moved the court to strike it out and enter summary judgment for the defendant (Rules of Court 3:20), which motion the court overruled; whereupon, no further evidence being introduced, on motion of the plaintiff the court discharged the jury and entered judgment for the plaintiff in the sum of $2,369.50, and the defendant appeals.

There is no dispute about the amount of the judgment, and the evidence introduced established the following facts:

The plaintiff was a used-car dealer with a place of business at 273 E. Little Creek Road, in Norfolk. In April, 1963, while the insurance policy issued by Aetna was in effect, two men and a girl came to the plaintiff's premises in an automobile with rental tags on it. They said they were interested in buying a 1963 model Thunderbird automobile. The plaintiff showed them one, they looked it over and

agreed on a price of $4,195. The girl said she had just married the man named Dillinger and that her father, who lived at Virginia Beach, was to buy them a car for a wedding present. The three then left and said they would be back next day. Next morning they came back in the same car as before, told the plaintiff they had decided on the car and wanted it washed so they could take it to Virginia Beach to show the girl's father, and if he approved they would bring the money back. Plaintiff said he would do it and after the car was washed he told the people to pull it over across the street to the Mobil filling station and have two dollars' worth of gas put in, and that his salesman would come over with the gas ticket. He further told them, he said, that when his salesman got there "the three of them" would go to Virginia Beach, and if her father did not buy the car the salesman would bring it back. It was his usual procedure, he said, not to let his cars go out unless he knew the people personally, and he did not know these people.

Plaintiff testified that the man named Dillinger, who was supposedly the girl's husband, drove the car from the plaintiff's lot to the Mobil filling station, but when the salesman got there the car and the people were gone. The people were not found but the automobile was located three or four weeks later at South Hill, Virginia, about 110 miles away, stripped of its motor and other parts, and what was left was hauled back to the plaintiff's place in Norfolk.

The Mobil service station to which the car was driven from the plaintiff's premises was at No. 271 E. Little Creek Road, on the same side of the street as plaintiff's premises. The plaintiff's lot and the filling station lot were separated by a narrow street, but photographs in evidence indicated that from the plaintiff's office on his property to the pumps at the filling station was a distance of a number of feet. The plaintiff testified that he had no interest in the filling station and that he did not see the automobile when it was there because he had gone into his office. The salesman also had no observation of the automobile but was inside the plaintiff's building when given the gasoline ticket. He carried the ticket to the filling station but when he got there the automobile was gone.

The filling station operator testified that the Thunderbird came over and the man driving it said Kaplan sent him for two dollars' worth of gas and the salesman would be over with the purchase ticket. He put the gas in the car, which was then standing at the filling station with the motor on, and when he had finished the car

pulled off, driven by the man who drove it in. The salesman was then coming across plaintiff's car lot and when he arrived with the gas ticket he inquired where the car was.

Aetna argues that in these circumstances the exclusion provision of the policy applies, while the plaintiff contends that it does not.

As pointed out in *Baxter Motors v. Iowa Hardware Mutual Ins. Co.*, 15 Ill.App.2d 524, 146 N.E.2d 797, the exclusion clause (practically the same there as here) excludes two types of losses: (1) loss resulting from voluntarily parting with title or possession if induced by fraudulent scheme, etc.; and (2) loss resulting from embezzlement, conversion, etc., committed by any person entrusted by the insured with *custody or possession* of the automobile. In that case a pretended purchaser agreed on Saturday to buy an automobile and was allowed to drive it away with the understanding that he would bring it back the following Monday and pay for it. Neither he nor the car was afterwards found. It was held that there was no ambiguity in the exclusion clause and it relieved the insurer of liability.

In *Gibson v. St. Paul Fire & Marine Ins. Co.*, 117 W. Va. 156, 159, 184 S.E. 562, 563-4, it was said:

"* * Custody of things means to have them in charge—safekeeping. It implies temporary physical control merely, and does not connote domination, or supremacy of authority, as does possession in its full significance. Possession implies custody coupled with a right or interest of proprietorship. Possession is inclusive of custody, but custody is not tantamount to possession. * *" See also 7 Am. Jur.2d, Automobile Insurance, § 53, p. 361; 25 C.J.S., Custody, p. 70.

In *Waters Motor Co. v. Grain Dealers Mutual Ins. Co.*, 12 Wis.2d 231, 107 N.W.2d 129, a customer represented to the dealer that he had made up his mind to purchase the car but first wanted to show it to his wife, which would take not more than three-fourths of an hour, and he would then come back to close the transaction. He did not come back and the car was not returned. It was held that the dealer entrusted the automobile to the supposed customer and gave him custody and possession, and hence the insurer was relieved of liability by the terms of the exclusion clause of his policy which was in practically the same words as those in the present case.

As said in the case last cited, on substantially analogous facts recovery has been denied under similar exclusion clauses in the following cases: *Pacific Indemnity Co. v. Harrison* (Tex. Civ. App.), 277 S.W.2d 256; *Hanover Fire Ins. Co. of New York v. Scroggs*, 92

Ga. App. 548, 88 S.E.2d 703; *Dupre* v. *Western Assurance Co.* (La. App.), 112 So.2d 165; *Milburn* v. *Federated Mutual Imp. & Hard. Ins. Co.* (Okl.), 349 P.2d 644. See also *Hartford Fire Ins. Co.* v. *Tubb*, (5 Cir.), 242 F.2d 921; *Nelson* v. *Pennsylvania Fire Ins. Co.*, 154 Neb. 199, 47 N.W.2d 432.

In the last named case three strangers came to the dealer's premises and inspected a truck which they said seemed to satisfy their needs and they asked for a demonstration. They were allowed to drive it off the premises unaccompanied, but with instructions as to where they should drive. They never returned and some two months later the truck was found in another county. The insurance company was held not to be liable under an exclusion clause which excluded loss if the insured voluntarily parted with title or possession. The court held that the insured voluntarily parted with possession.

The exclusion clause in the present case excludes a loss which results from conversion or secretion, as well as from theft, larceny, etc., committed by any person entrusted by the insured with custody or possession of the automobile. There is no ambiguity in that language and "an insurance contract, like other contracts, must be construed in accordance with its terms; its plain meaning must be given effect; courts cannot make contracts for parties." *Combs* v. *Hunt*, 140 Va. 627, 635, 125 S.E. 661, 664.

It is not doubtful that the plaintiff entrusted the custody of the automobile in this case to the prospective purchasers. He told these people, he said, to take the car across the street to the filling station and the man called Dillinger drove it from the plaintiff's premises to the filling station, unaccompanied by the plaintiff or his agent, out of the view of both, and without any means of control by either during that time. The distance and the time involved were less than in all but one of the cases cited, but there were distance and time and opportunity enough to enable the man who drove it to the station to drive it on away from the station and convert it to his purposes.

We hold that the exclusion clause in the insurance policy applied to the facts established by the evidence and relieved the defendant from liability for the damage to the plaintiff's automobile.

The judgment appealed from is therefore reversed and final judgment will be entered for the defendant.

*Reversed and final judgment.*