Habold Brans, J.
Plaintiff corporation, engaged in the sale and rental of motion picture equipment, was duped by an unknown person and deceived into relinquishing merchandise valued at $6,104.
Prior to August 29, 1966, the plaintiff on numerous occasions had sold and leased such equipment to a television program known as Candid Camera. On the day stated, following the usual procedure, plaintiff’s employee received a telephone call from someone representing to be a representative of Candid Camera, and in the conversation enumerated items of professional motion picture equipment which were to be furnished to a messenger on the following day. After the equipment had been assembled, a messenger did appear at plaintiff’s place of business, stated he was from Candid Camera, obtained the equipment, and signed a receipt therefor.
As it subsequently developed, Candid Camera never ordered or received said equipment; in fact it appeared the equipment had been stolen from the plaintiff through the aforesaid trick.
Asserting its monetary loss, plaintiff sought indemnification from the defendant under an “ all risk ” policy which it had obtained and upon which premiums had been paid.
Defendant denied liability, relying on an exclusionary clause contained in a “ Camera and Musical Instruments Form ” constituting part of said policy. The exclusionary clause, subdivision (e) of paragraph 7, reads as follows: “ Misappropriation, secretion, conversion, infidelity or any dishonest act on the part of the assured or other party of interest, his or their employees or agents or others to whom property may be entrusted (carriers for hire excepted) ”.
During the course of the trial the jury was waived and the parties stipulated that the court could resolve all issues of fact, the court having indicated during argument at the close of plaintiff’s case that in its opinion the clause in question did not bar recovery.
The defendant maintains that the loss in question was occasioned by infidelity and 'Tshonest acts on the part of the person to whom the property was delivered, that even if the plaintiff was deceived by the messenger, nevertheless the equipment was “ entrusted ” and the clause in issue is sufficiently broad to embrace such chicanery and therefore liability under the policy is precluded.
Principal reliance is placed by defendant upon Abrams v. Great Amer. Ins. Co. (269 N. Y. 90). In that case the jewelers’ block policy therein involved excluded (p. 91): “ Loss or damage or expenses by or resulting from theft, conversion or other act or *450 omission of a dishonest character * * * on the part * * * of any person to whom the property hereby insured may be entrusted by whomsoever for any purpose whatsoever ”.
It appeared the plaintiff therein, a jeweler, delivered certain jewelry to one Rose Friedman, a person with whom plaintiff had previously dealt for resale. After securing possession of the jewelry, Rose Friedman disposed of the jewelry but absconded to Europe with the proceeds of her theft. Later arrested and extradited, she pleaded guilty to grand larceny.
The Court of Appeals, despite her secret intention to steal ■the jewelry prior to its receipt by her, had no doubt that Rose Friedman had been “ entrusted ” with the jewelry in question and applied exclusionary clause thus preventing recovery by plaintiff therein.
In analyzing the exclusionary clause, the court said (pp. 92-93): “ When the word ‘ entrusted ’ appears in the contract, the parties must be deemed to have entertained the idea of a surrender or delivery or transfer of possession with confidence that the property would be used for the purpose intended by the owner and as stated by the recipient. The controlling element is the design of the owner rather than the motive of the one who obtained possession. Because plaintiff was deceived and his confidence was abused, he entrusted his property to a thief, the meaning of the word as used in this contract is such ‘ as common thought and common speech would now imagine and describe it.’ ”
On a first reading there would appear to be no doubt that the Abrams case would prevent recovery by plaintiff in the case aj; bar. But, there appears to be critical difference when the facts of the within controversy are superimposed on the facts of the Abrams case. In the Abrams case there was recognition of Mrs. Friedman as a customer with whom the plaintiff had previously dealt. As a matter of fact, she had previously established her credit with plaintiff. Mrs. Friedman had never misrepresented herself. It is in that context that the analysis of the word ‘ ‘ entrusted ’ ’ should be viewed.
In the case at bar, there were no prior business dealings between the plaintiff and the messenger or alleged representative of Candid Camera. There was, on the contrary and in retrospect, unmitigated deceit from the outset, not only as to intent, but as to identification of the recipient.
It is in this context that a further analysis of the exclusionary clause would appear necessary. Under the said clause, liability does not result where there is misappropriation, secretion, conversion, infidelity, or any dishonest act on the part of five *451 classes of persons, namely the insured, other party of interest, his or their employees or agents, and others to whom property may be entrusted (italics added).
It is apparent the latter clause seeks to expand the classification of those whose criminal activities would not result in indemnification to the insured. But whether it would embrace the activity of the union unidentified messenger is open to question.
In the construction of the terms of an insurance policy, where the terms are ambiguous, the policy is to be construed strictly against the insurer (Hartol Prod. Corp. v. Prudential Ins. Co. of America, 290 N. Y. 44).
Precise evaluation of the intendment of such clause may be aided by the application of the rule ejusdem generis. It has been stated that, “ In the construction of laws, wills and other instruments, the ‘ ejusdem generis rule ’ is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same genéral kind or class as those specifically mentioned.” (Black, Law Dictionary [4th ed.], citing Goldsmith v. United States, 42 F. 2d 133, 137; Aleksich v. Industrial Acc. Fund, 116 Mont. 127.) “ The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention.” (Black, Law Dictionary, supra.)
The fact, however, that agents and employees are included in the exclusionary clause denotes a design to limit the meaning of the word “ others ”. If this were not so, there would be no need to include the words “ employees and agents ” in the exclusionary clause.
Only by applying the rule of ejusdem generis beyond its widest ambit could it be held that the phrase, ‘‘ others to whom property may be entrusted, ’ ’ would include one who at the outset is not in any respect known to the prospective victim as a customer but is in fact a thief.
As stated in the Abrams case, the plaintiff previously dealt with Mrs. Friedman. She was given the goods on consignment. Thus like the insured’s agents and employees whose function it was to dispose of the articles through sale, she could properly be considered as among “ others to whom property may be entrusted ”.
This analysis of the encompassing effect of the clause under consideration in the present case does not appear to have been raised in the Abrams case (see Abrams v. Great Amer. Ins. Co., *452 supra, Record on Appeal). Apparently it was not because in taking the goods on consignment as a known customer, Mrs. Friedman was simulating the functions of the defendant’s employees or agents. Thus in the Abrams case the issue involved is the effect of her deceit upon the surrender of the jewelry, not the encompassing extent of the exclusionary clause.
Viewing the clause ‘ ‘ other persons to whom property may be entrusted ’ ’, etc., in the context of the case at bar it would appear to apply to persons whose status is created or accepted by the assured, the result of a consensual relationship between the parties, but it is not applicable to persons whose status is solely self-generated. It was the former risk which was intended to be excluded, not the latter.
It is therefore unnecessary to determine, as plaintiff argues, whether or not consent induced by misrepresentation can amount to an entrustment, which was the approach utilized in Freedman v. Queen Ins. Go. (56 Cal. 2d 454). In that case jewelry was delivered and entrusted to a messenger from a jewelry company known to the plaintiff. After securing the jewelry the messenger disappeared. The California court refused to apply the exclusionary clause present in the policy there, holding that since possession was obtained by a false impersonation, it amounted to conversion, an actionable tort, and that a consent to relinquish the jewelry under such circumstances could not amount to a valid delivery or entrustment under California law (citing Restatement, Torts, § 221, Comments b and d).
The cases relied upon by defendant (Hartford Fire Ins. Co. v. Tubb, 242 F. 2d 921; David R. Balogh, Inc. v. Pennsylvania Millers Mut. Fire Ins. Co., 307 F. 2d 894), although also concerned with construction of exclusionary clauses similar to the one at bar, each deal with situations where merchandise in the first instance was delivered and entrusted to a person theretofore known to the seller. There was no misrepresentation of the identity of the recipient of the merchandise at the outset as here. Therefore, cases appear to be inapplicable.
Holding then that the exclusionary clause does not bar recovery there remains the ascertainment of the amount of damages which plaintiff may recover.
In cases of conversion the normal measure of damage is the value of the property at the time and place of conversion, to which may be added interest on such value (McCormick, Damages, § 123). Although it is the market value which usually controls, if there is no market or if the salable value does not adequately represent the real worth of the property to the plaintiff, *453 the court may accept a special value to the plaintiff as the standard. (McCormick, supra.)
Here, however, the policy itself provides the applicable measure of damage (§ 8, b, I) of the said Camera & Musical Instrument dealers’ form, which reads as follows: “ (I) On unsold property the Company shall not be liable for more than the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality ”.
Accordingly, I find the damages to which plaintiff is entitled to be $5,864, and plaintiff is entitled to judgment therefor, together with interest and costs.