**M.H. LIPINER & SON, INC., Plaintiff–Appellant,**

v.

**The HANOVER INSURANCE COMPANY, Defendant–Appellee.**

**No. 646, Docket 88–7813.**

United States Court of Appeals, Second Circuit.

Argued Jan. 11, 1989.

Decided March 10, 1989.

Howard L. Mann (Donald A. Pitofsky, Schwartzman Weinstock Garelik & Mann, P.C., New York City, of counsel), for plaintiff-appellant.

Alan Jay Martin (Kevin J. Spencer, Abrams & Martin, P.C., New York City, of counsel), for defendant-appellee.

Before KAUFMAN, WINTER and MINER, Circuit Judges.

MINER, Circuit Judge:

Plaintiff-appellant M.H. Lipiner & Son, Inc. ("Lipiner") appeals from a summary judgment entered in the United States District Court for the Southern District of New York (Conboy, J.) in favor of defendant-appellee The Hanover Insurance Company ("Hanover"). The action was brought to gain a declaratory judgment imposing responsibility upon Hanover to defend and indemnify Lipiner under the terms of a jewelers' block insurance policy issued to Lipiner by Hanover. Lipiner's pursuit of the declaration of responsibility was occasioned by a lawsuit commenced to recover the value of precious stones it allegedly misdelivered. The district court held that Hanover, in disclaiming any obligation to defend or indemnify, properly relied on a specific exclusion clause in the insurance policy. Because we agree that the insurance policy in question does not provide the insurance coverage claimed by Lipiner, we affirm the summary judgment entered in favor of Hanover.

## BACKGROUND

According to a "Stipulation of Facts" submitted by the parties on the motion for summary judgment, Lipiner is engaged in the business of buying, selling and dealing in precious stones, diamonds, jewels and jewelry at 30 West 47th Street in New York City. "On or about November 19, 1987," the parties have agreed, a jeweler named Ramin Zar "delivered and/or entrusted" a number of precious stones to Lipiner's president, Solomon Lipiner ("Solomon"), for overnight safekeeping. Zar himself placed the stones in an envelope, which Solomon deposited in the safe located at Lipiner's place of business. On November 20, 1987, Solomon "mistakenly delivered" the stones to one Toma Ben a/k/a Tim Golan. There is no dispute that Solomon "misidentified said Toma Ben as Zar" and "mistakenly ... relinquished the [precious stones] to the wrong person." It seems almost superfluous to relate that Toma/Tim has absconded and that the stones are nowhere to be found.

After Zar discovered that Solomon had relinquished his merchandise to the wrong person, he caused his counsel to notify Lipiner that he had sustained a loss of $148,000. Since no payment was forthcoming, Zar commenced an action in the Southern District in February of 1988 against Lipiner and Solomon. Recovery was sought in the sum of $177,600, representing the value of the lost merchandise plus lost profits of $29,600, and the action remains pending. When Hanover refused to defend and indemnify Lipiner in the lawsuit brought by Zar, Lipiner instituted the action at bar in April of 1988, claiming that the situation in which it found itself was precisely the sort of risk covered by the jewelers' block insurance policy issued to it by Hanover.

The insurance policy in question, dated February 3, 1987, insures against all risks of loss of, or damage to, described property, with certain exceptions specified in the policy. The property insured includes jewelry and precious stones, Policy Article 3(A), "delivered or entrusted to the Insured by others who are dealers in such property or otherwise engaged in the jewelry trade, but only to the extent of the Insured's ... legal liability for loss of or damage thereto." Policy Article 3(C). Exceptions from coverage provided in Article 5 of the Policy include: "(A) Loss, damage or expense caused by or resulting from theft, conversion or other act or omission of a dishonest character ... (2) On the part of any person to whom the property hereby insured may be delivered or entrusted by whomsoever for any purpose whatsoever...."

Lipiner contends that both the negligent misdelivery by Solomon and the larceny by trick or false pretenses committed by Toma Ben are covered risks, that the exception clause is not applicable because there was no "delivery" to Toma Ben in a legal sense and that it therefore is entitled to indemnity in the Zar action. Moreover, Lipiner contends that it is entitled to a defense by Hanover in that action. In making the latter contention, it relies on Article 10 of the Policy, which provides: "If legal proceedings be taken to enforce a claim against the Insured as respects any such

loss or damage, the Company reserves the right at its option without expense to the Insured, to conduct and control the defense on behalf of and in the name of the Insured." Lipiner argues that the allegation of negligence in the Zar complaint is sufficient to trigger Hanover's duty to defend, which is greater than its duty to indemnify.

In June of 1988, the District Court entertained a motion for summary judgment by Lipiner and a cross-motion for summary judgment by Hanover. In granting Hanover's motion and denying Lipiner's motion, the court found that "[t]he property at issue was delivered to Toma Ben, who absconded with it. Toma Ben's action constitutes a conversion...." Accordingly, the court dismissed the indemnity claim by applying Article 5(A)(2) of the insurance policy, which excludes coverage in the case of delivery to third party converters. The court also dismissed Lipiner's claim that it was entitled in any event to a defense in the Zar action, since "no basis for recovery under the insurance policy issued by the defendant to the plaintiff is stated in the complaint against the insured in the underlying action."

## DISCUSSION

Under an "all-risk" insurance policy of the type under consideration here, recovery is allowed for all losses not resulting from misconduct or fraud unless there is a specific policy provision excluding coverage of the loss in express terms. *Atlantic Lines Ltd. v. American Motorists Ins. Co.*, 547 F.2d 11, 12 (2d Cir.1976). Once the insured shows that a loss has occurred, the insurer shoulders the burden of demonstrating that the loss claimed is excluded expressly from coverage under the policy terms. *Pan American World Airways, Inc. v. Aetna Casualty & Surety Co.*, 505 F.2d 989, 999 (2d Cir.1974). Exclusionary clauses are given the interpretation most beneficial to the insured. *See National Screen Service Corp. v. United States Fidelity & Guaranty Co.*, 364 F.2d 275, 279 (2d Cir.), *cert. denied*, 385 U.S. 958, 87 S.Ct. 394, 17 L.Ed.2d 304 (1966).

Hanover has carried its burden by showing that Lipiner's claim for indemnity falls squarely within the exclusionary clause of the jewelers' block policy. Article 5(A)(2) of the policy issued to Lipiner excludes losses caused by conversion on the part of anyone to whom the insured property is delivered by anyone else. Although Lipiner insists that the stones were negligently misdelivered by Solomon, rather than converted, its focus is misplaced. The conversion was accomplished by Toma Ben, who took delivery of the insured property from Solomon. There can be no question that Ben obtained the merchandise dishonestly and converted it to his own use by exercising dominion and control to the exclusion of the true owner. *See Meese v. Miller*, 79 A.D.2d 237, 242, 436 N.Y.S.2d 496, 500 (4th Dep't 1981). The fact that Ben may have acquired the stones through larceny by trick or false pretenses does not change this result. *See David R. Balogh, Inc. v. Pennsylvania Millers Mutual Fire Ins. Co.*, 307 F.2d 894, 897 (5th Cir.1962); Restatement (Second) of Torts §§ 223(a), 221(b) (1965).

There also was a delivery within the meaning of Article 5(A)(2), despite Lipiner's claim that delivery can be made only to a person intended to be a recipient. In Lipiner's view, Solomon's intention to hand over the stones to Zar was frustrated by Ben's deception and, therefore, Solomon did not "deliver" the stones when he negligently gave them to Ben. There being no delivery, Lipiner asserts, the Policy should cover the loss. However, "language employed in [a] contract of insurance must be given its ordinary meaning, such as the average policyholder of ordinary intelligence, as well as the insurer, would attach to it." *Abrams v. Great American Ins. Co.*, 269 N.Y. 90, 92, 199 N.E. 15, 16 (1935). Delivery is defined in its ordinary meaning as the yielding of possession or control, Webster's Third New International Dictionary (1986), and Solomon undoubtedly "delivered" the stones to Ben. The fact that Solomon thought Ben was Zar makes no difference, for there was a delivery from Lipiner to Ben within the understanding of the average policyholder. *See Facet In-*

*dus., Inc. v. Wright,* 62 N.Y.2d 769, 771–72, 465 N.E.2d 1252, 1253–54, 477 N.Y.S.2d 316, 318 (1984) (delivery or entrustment necessary for operation of all-risk policy's exclusion clause).

Lipiner relies heavily on *Camera Mart, Inc. v. Lumbermans Mutual Casualty Company,* 58 Misc.2d 448, 294 N.Y.S.2d 941 (Civ.Ct.1968), *aff'd,* 64 Misc.2d 860, 316 N.Y.S.2d 421 (App. Term 1969) (per curiam), as authority for the proposition that there can be no delivery by one who is deceived into relinquishing property. However, the exclusionary clause in *Camera Mart* precluded recovery only in the case of entrustment, and made no mention of delivery. Moreover, the entrustment exclusion in *Camera Mart* applied only "to persons whose status is created or accepted by the assured, the result of a consensual relationship between the parties, but it [was] not applicable to persons whose status is *solely* self-generated. It was the former risk which was intended to be excluded, not the latter." *Id.* at 452, 294 N.Y.S.2d at 945 (emphasis added). Here, the status of Ben, the person to whom the merchandise was entrusted, assuming for the purpose of argument that there was an entrustment, was not *solely* self-generated. According to the Stipulation of Facts, Solomon mistakenly delivered the property to Ben and Ben merely failed to disclose the mistake.

Finally, there is no foundation for Lipiner's argument that because the complaint in the Zar suit alleges a theory of liability within the scope of the Policy's coverage, it must be afforded a defense by Hanover. As has been demonstrated, the Policy does not provide the coverage urged by Lipiner, and Hanover properly has resisted the demand for indemnification. Under such circumstances, an insurer is entitled to judgment declaring that it need not defend the insured. *See Lionel Freedman, Inc. v. Glens Falls Ins. Co.,* 27 N.Y.2d 364, 368–69, 267 N.E.2d 93, 94, 318 N.Y.S.2d 303, 305–06 (1971). Furthermore, Article 10 of the Policy imposes no obligation to defend; in clear language it only "reserves the right" of Hanover to conduct the defense. Hanover was entitled at its option to take over the defense of Lipiner in a suit impli-

cating its indemnification obligation. It simply declined to exercise its option in this case.

## CONCLUSION

The judgment of the district court is affirmed.