PLANTS AND GOODWIN,
INC., Plaintiff,

v.

ST. PAUL SURPLUS LINES
INSURANCE CO.,
Defendant.

No. 99–CV–133A.

United States District Court,
W.D. New York.

May 11, 2000.

Robert J. Simon, Hornburg, Diggs, Backhaus & Simon, P.C., Olean, NY, for Plants and Goodwin, Inc., plaintiff.

Patrick Tomovic, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, for St. Paul Surplus Lines Insurance Company, defendant.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Hugh B. Scott pursuant to 28 U.S.C. § 636(b)(1)(B), on March 2, 1999. On March 31, 2000, Magistrate Judge Scott filed a Report and Recommendation, recommending that plaintiff's motion for partial summary judgment be denied, that defendant's motion for summary judgment be granted, and the complaint dismissed in its entirety.

The Court has carefully reviewed the Report and Recommendation, the record in this case, and the pleadings and materials submitted by the parties. No objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Scott's Report and Recommendation, plaintiff's motion for partial summary judgment is denied, defendant's motion for summary judgment is granted, and the complaint dismissed in its entirety.

IT IS SO ORDERED.

### Report & Recommendation

SCOTT, United States Magistrate Judge.

Before the Court is plaintiff's motion for partial summary judgment (Docket No. 9) and defendant's motion for summary judgment (Docket No. 12).

### Background

This insurance coverage dispute involves damage to cattle arising from the discharge of approximately 200 gallons of crude oil from an oil well and storage tank system (the "storage tank") on property owned by Eldyn and Mary Smith in Allegany County, New York (the "Smith Site"). Michael and Darleen Whitesell (the "Whitesells"), owners of the injured cattle and the farmland adjoining the Smith Site, commenced a state court action against Richardson–Walchli Corp. ("Walchli"), the storage tank's owner and operator. Walchli, in turn, filed a third-party complaint against Plants and Goodwin, Inc. ("P & G"), the company contracted to withdraw the crude oil from the storage tank and transport it to a refinery. Walchli alleges that P & G caused the discharge of crude oil which damaged the Whitesells' cattle. In this action, P & G seeks a judicial declaration that St. Paul Surplus Lines Insurance Company ("St. Paul") is obligated to defend and indemnify it under the contract of insurance St. Paul issued to P & G (the "Insurance Contract").

By the instant motion, P & G seeks partial summary judgment declaring that St. Paul is obligated to defend P & G in the third-party action brought by Walchli. St. Paul contends that the Insurance Contract contains an absolute pollution exclusion which clearly and unambiguously bars coverage for any damage arising from the discharge of pollutants. St. Paul argues, that since the policy does not cover the incident, St. Paul has no duty to defend P & G.

### The Insurance Policy

St. Paul issued an Oil and Gas Commercial General Liability Policy (No. SW05502615) to P & G for the period of July 15, 1993 through July 15, 1994. (See "Insurance Contract" attached as Exhibit B to the Affidavit of Linda Sikora, dated October 26, 1999.) The general liability policy contains a pollution exclusion which bars any coverage obligation for damages arising from the actual, alleged or threatened discharge, escape, or release of pollutants. It provides:

> We won't cover injury or damage or medical expenses that result from pollution at or from any:
> - protected person's premises;
> - waste site;
> - protected person's work site;
> - offshore site;
> - of your products; or
> - of your completed work.

Nor will we cover injury or damage that results from pollution involving any waste pollutant. We also won't cover any loss, cost or expense that results from:

- any request, demand or order that any protected person or others perform pollution work; or

- any claim or suit by or for any governmental authority for damages that result from the performance of pollution work.

**Pollution** means *any actual, alleged or threatened discharge, dispersal, escape, migration, release or seepage of any pollutant.*

**Pollutant** means any solid, liquid, gaseous or thermal irritant or contaminant, including:

- smoke, vapors, soot, fumes;

- acids, alkalis, chemicals; and

- waste.

**Waste** includes materials to be recycled, reconditioned or reclaimed.

See Insurance Contract at (bates numbered) pages 000028–29 (emphasis added).

The pollution exclusion contained in the policy further provides P & G with at least two specific examples which demonstrate the lack of coverage for pollution related claims. Among the examples is one which states that coverage is barred where an oil leak causes damage to wildlife:

A subcontractor working for you brings a diesel fuel storage tank to the building site for refueling of its excavation equipment. After a couple of days it is discovered that the tank has been leaking. The escaped fuel must now be cleaned up. We won't cover the cost of that clean-up.

\* \* \* \* \* \*

You own an oil well located in the middle of a lake. A pipe bursts that spills oil into the lake, which causes a fish kill. We won't cover such damage.

See Insurance Contract at (bates numbered) page 000029.

**The Pollution Coverage Endorsement**

While the general liability portion of the Insurance Contract contains the above pollution exclusions, the Insurance Contract also contains an additional Pollution Coverage Endorsement (the "Pollution Rider"). The Pollution Rider was intended as a "change" to the policy which "broadens coverage." (See Insurance Contract at (bates numbered) page 000036.) The Pollution Rider provides:

We won't apply the Pollution exclusion to amounts any protected person is legally required to pay as damages for covered bodily injury, property damage; or clean-up costs that results from a covered pollution incident at or from:

- your premises;

- your work site;

- your products; or

- your completed work

and is caused by any of the following operations performed by or for you:

- Gasoline recovery—from casing head or natural gas;

- Oil lease operations;

- Gas lease operations—natural gas;

- Cleaning, drilling, redrilling, servicing, shooting, or swabbing of oil or gas wells; or

- Installation or recovery of casing in oil or gas wells.

Covered pollution incident means the discharge, dispersal, release or escape of pollutants that:

- Results from an event;

- Begins and ends within 72 hours, and does not result from a well out of control; or results from a well out of control above the surface of the ground or waterbottom;

- Is known to you or your operating partner within 7 days of its beginning; and

• Is reported to the company within 30 days of its beginning.

Insurance Contract at (bates numbered) page 000036.

St. Paul admits that the provisions of the Pollution Coverage Endorsement would have provided coverage for the type of pollution at issue in this case *if* P & G had complied with the "very strict" endorsement requirements, including the notice provisions. (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment at page 13.) P & G acknowledges that it cannot establish that it complied with the specific requirements and is not seeking coverage under the Pollution Coverage Endorsement. (Plaintiff's Memorandum of Law in Support of its Motion for Partial Summary Judgment at page 4.) Instead, P & G takes the position that "the pollution exclusion is not applicable since the leakage of crude oil in this case does not constitute 'pollution' under the terms of the pollution exclusion." (*Id.*)

## Discussion[1]

### Standard of Review

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. See *Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186, 188 (2nd Cir.1992) citing *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). The non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." *Lendino v. Trans Union Credit Information, Co.*, 970 F.2d 1110, 1112 (2nd Cir. 1992), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material:

when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

*General Electric Company v. New York State Department of Labor*, 936 F.2d 1448, 1452 (2nd Cir.1991), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The non-moving party must come forward with enough evidence to support a jury verdict ... and the ... motion will not be defeated merely ... on the basis of conjecture or surmise." *Trans Sport*, supra, 964 F.2d at 188, quoting *Bryant v. Maffucci*, supra. "If undisputed material facts are properly placed before the court by the moving party, those facts will be deemed admitted, unless they are properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2nd Cir.1992), citing *Dusanenko v. Maloney*, 726 F.2d 82 (2nd Cir.1984). The Court's responsibility in addressing a summary judgment motion is identifying factual issues, not resolving them. See *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 528 (2nd Cir. 1990).

### The Duty to Defend Standard

Under governing New York law, an insurer's duty to defend is "exceedingly broad" and is separate from and more expansive than the duty to indemnify. *McCostis v. Home Ins. Co. of Ind.*, 31 F.3d 110, 112 (2d Cir.1994); *Colon v. Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 494 N.Y.S.2d 688, 689, 484 N.E.2d 1040 (1985); *Continental Casualty Co. v. Rapid–American Corp.*, 80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993). "It is not, however, without limits." *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165 (2d Cir.1998). An insurer cannot be obliged to defend if there is no legal or

---

1. Both parties agree that New York law applies in this case. See Plaintiff's Memorandum of Law in Support of Partial Summary Judgment at page 4; Defendant's Memorandum of Law in In Opposition to Plaintiff's Motion for Partial Summary Judgment and in Support of its Cross–Motion for Summary Judgment at page 2.

factual allegation in the underlying complaint for which the insurer might eventually have to indemnify the insured. See *McCostis,* 31 F.3d at 112; *Allstate Ins. Co. v. Mugavero,* 79 N.Y.2d 153, 581 N.Y.S.2d 142, 147, 589 N.E.2d 365 (1992). *Commercial Union Assur. Co., PLC v. Oak Park Marina, Inc.,* 198 F.3d 55, 59 (2d Cir. 1999).

**The Pollution Exclusion**

 As discussed above, under New York law, "[a]n insurer must defend whenever the four corners of the complaint suggest—or the insurer has actual knowledge of facts establishing—a reasonable possibility of coverage." *Steuben Contracting, Inc. v. Employers Ins. of Wausau,* 975 F.Supp. 479, 481 (W.D.N.Y.1997) citing *Continental,* 593 N.Y.S.2d at 969, 609 N.E.2d 506. To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case. Therefore, "[i]f the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." *Technicon Electronics Corp. v. American Home Assurance Co.,* 74 N.Y.2d 66, 74, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989). In addition, "the insurer bears the burden of proving that an exclusion applies." *State of New York v. Blank,* 27 F.3d 783, 788 (2d Cir.1994).

 To determine whether coverage is required, the court must examine the complaint in the underlying action and decide whether there are "any allegations that arguably or potentially bring the action within the protection purchased" or a "reasonable possibility" that coverage exists. *Steuben,* 975 F.Supp. at 481 citing *EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.,* 905 F.2d 8, 11 (2d Cir.1990) (quoting *Avondale Indus., Inc. v. Travelers Indem. Co.,* 894 F.2d 498, 500 (2d

Cir.1990) (per curiam)). Any exclusions from coverage are to be given a strict construction, *Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.,* 19 F.3d 78, 81 (2d Cir.1994), and must be "given the interpretation most beneficial to the insured." *M.H. Lipiner & Son, Inc. v. Hanover Ins. Co.,* 869 F.2d 685, 687 (2d Cir.1989). "When construing an insurance policy, the tests applied are 'common speech' and the 'reasonable expectation and purpose of the ordinary businessman.' " *Stoney Run Co. v. Prudential–LMI Commercial Ins. Co.,* 47 F.3d 34, 37 (2d Cir.1995) (quoting *Ace Wire & Cable Co. v. Aetna Cas. & Surety Co.,* 60 N.Y.2d 390, 469 N.Y.S.2d 655, 457 N.E.2d 761 (1983)).

 In the instant case, the question is whether the "only reasonable interpretation" of the language of the Insurance Contract, as construed from the perspective of an ordinary businessman, would include the leakage of crude oil from a storage facility into the surrounding ground (where it was ingested by cattle) as constituting "pollution" as defined (and excluded) by the policy.

P & G relies almost entirely upon the state court decision in *Whitesell v. Richardson–Walchli,*[2] for its position that the leakage of crude oil does not constitute "pollution" under the terms of the pollution exclusion. The defendant asserts that the Court in *Whitesell* was interpreting a different contract with different language. Moreover, the defendant asserts, the *Whitesell* decision fails to apply controlling New York law which holds that crude oil is a pollutant and that a crude oil leak constitutes the "discharge" or "release" of a pollutant. Finally, St. Paul argues, its policy language is clear and unambiguous in that it excludes the type of claim asserted by P & G.

In *Whitesell,* the State Court surveyed a number of pollution exclusion cases and concluded "that the pollution exclusion

**2.** The unreported memorandum decision is attached as an exhibit to Plaintiff's Memorandum of Law in Support of the Motion for Partial Summary Judgment.

contained in the policy issued to Walchli can be reasonably interpreted as applying solely to instances of environmental pollution and not to all contact with substances that may, under certain circumstances, be classified as pollutants." The Court reasoned as follows:

The complaint in the underlying action alleges that the Whitesell's cows were directly harmed by the consumption of crude oil and other hydrocarbons that had leaked out of the storage tank sometime between May 25, 1994 and May 26, 1994, or other unknown time. There is no allegation that such substances were widely dispersed in substantial quantities over a considerable period of time or that the escape of such substances resulted in pollution of the environment. Under the facts alleged, the harm to the Whitesell's cows may be reasonably characterized as having resulted not from environmental pollution but from the unintentional release of a limited amount of crude oil and other hydrocarbons having no significant effect on the environment. Further because the definition of "pollutant" in the pollution exclusion at issue makes no reference to crude oil, hydrocarbons or petroleum products, it is unclear whether coverage for damage caused by the discharge or release of such substances is excluded under the policy.

However, oil or petroleum are commonly considered "pollutants" excluded under such insurance policies in New York courts. *Tartan Oil Corp. v. Clark*, 258 A.D.2d 457, 684 N.Y.S.2d 600 (2d Dept. 1999) (total pollution exclusions in liability policies that excluded coverage for any property damage caused by pollutants precluded coverage for cleanup costs necessitated by leakage of petroleum from underground storage tanks into soil and groundwater); *Ziankoski v. Boonville Oil Co., Inc.*, 241 A.D.2d 951, 661 N.Y.S.2d 322 (4th Dept.1997) (pollution exclusion clause in homeowners' policy unambiguously precluded coverage for property damage re-

sulting when a third party mistakenly filled an old underground oil tank on insured's property, resulting in oil spill into insured's basement); *State v. Capital Mut. Ins. Co.*, 213 A.D.2d 888, 623 N.Y.S.2d 660 (3d Dept.1995) (pollution exclusion clause in homeowner's policy precluded coverage for oil spill remediation claim; pollution exclusion clause precluded coverage for liability resulting from discharge into any body of land, and fuel oil was spilled onto surrounding soil). In *State*, the Third Department found that oil was included in the definition as a pollutant even though not expressly listed where the policy language provided as follows:

This policy does not apply to liability ... resulting directly or indirectly from the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse, body of water, bog, marsh, swamp or wetlands.

*State*, 623 N.Y.S.2d at 660.

Reversing the trial court which had found the language of the policy ambiguous, the Third Department stated:

In the interpretation of an insurance contract, [the court] will give plain and ordinary meaning to clear and unambiguous language. To do otherwise may change the intended meaning of the language (see, *Commissioners of State Ins. Fund v. Insurance Co. of N. Am.*, 80 N.Y.2d 992, 592 N.Y.S.2d 648, 607 N.E.2d 795). In the case at bar, the insurance policy includes a pollution exclusion. The pollution exclusion states, in unambiguous terms, that "[the] policy does not apply to liability ... resulting directly or indirectly from the discharge ... of ... pollutants into or upon land". The intended meaning of the exclusion is clear and unmistakable ... and it will be given effect. Defendant is entitled to summary judgment based on the appli-

cability of the policy exclusion to the claim at issue.

*State*, 623 N.Y.S.2d at 661.

If there were any question as to whether, under the language in the Insurance Contract at issue, the discharge or leakage of crude oil was included within the pollution exclusion, the examples set forth in the policy provide the clear and unambiguous answer. As noted above, the Insurance Contract here stated:

> A subcontractor working for you brings a **diesel fuel** storage tank to the building site for refueling of its excavation equipment. After a couple of days it is discovered that **the tank has been leaking.** The escaped fuel must now be cleaned up. **We won't cover the cost of that clean-up.**
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> *You own an oil well located in the middle of a lake. A pipe bursts that spills oil into the lake, which causes a fish kill We won't cover such damage.*

See Insurance Contract at (bates numbered) page 000029 (emphasis added).

This Court can find no authority for the application in this case of the other distinctions identified by the Court in *Whitesell.* The only reasonable interpretation of the language in the Insurance Contract, based upon the common use of the language from the perspective of an ordinary businessman, is that the pollution exclusion applied to any damage (including that to wildlife) resulting from the leakage of crude oil as occurred in this case.

The plaintiff also argues that the pollution exclusion does not apply because the crude oil was "contained within the containment 'dike.'" (It appears that the lands surrounding the storage tank were raised creating a basin in which the storage tank was located.) However, the Court finds no language in the Insurance Contract which suggests that this distinction is meaningful or creates an ambiguity.

**Notice Provisions**

St. Paul also maintains that P & G's claims must be rejected because P & G failed to give St. Paul timely notice of the incident even if the pollution exclusion was not applicable. In this regard, the Insurance Contract provided that in the event of any alleged incident, claim and/or suit:

> If an accident or incident happens that may involve liability protection provided in this policy, you or any other protected person involved must:
>
> 1. Notify the police if a law may have been broken.
> 2. Tell us or our agent what happened as soon as possible. Do this even though no demand for damages has been made against you or any other protected person, but you or another protected person is aware of having done something that may later result in a demand for damages. This notice should include all of the following:
>
> ● The time and place of the accident or incident;
>
> ● The protected person involved;
>
> ● The specific nature of the accident or incident including the type of demand for damages that may result; and
>
> ● The names and addresses of any witnesses and injured people. . . .
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> 10. Send us a copy of all written demands. Also send us a copy of all legal documents if someone starts a lawsuit.
> 11. Cooperate and assist us in securing and giving evidence, attending hearings and trials, and obtaining the attendance of witnesses.
> 12. Not assume any financial obligation or pay out any money without our consent. But this rule doesn't apply to first aid given to others at the time of an accident.

See Insurance Contract at (bates numbered) page 000009.

P & G concedes that it did not provide St. Paul with notice of the May 26, 1994 crude oil release until August 20, 1996. (Plaintiff's Responses to Defendant's First Set of Interrogatories, No. 10, attached as Exhibit E to the Declaration of Patrick M. Tomovic ["Plaintiff's Responses to Interrogatories"].) P & G states that it first became aware of the spill on approximately December 1, 1994 and that it became aware that there would be claims resulting from the spill on that very same day. (Plaintiff's Responses to Interrogatories, No. 10.) Thus, P & G did not notify St. Paul of the spill for more than 20 months from becoming aware of the event, and for more than 18 months from being advised of the claim against Witco Corporation (an affiliate of Walchli). (Affidavit of Paul R. Plants dated November 4, 1999 at ¶¶ 2–6). Indeed, Plants admits that when he was contacted by Eugene Cornelious (from Witco) shortly before December 2, 1994, Cornelious told him "that we should retain counsel because Witco had been sued on account of damage to cows resulting from a leak from the Walchli storage tank on the Smith farm and that we might be liable to Witco under paragraph 7 of our transportation contract." (Plants Affidavit at ¶ 3.) Notwithstanding this information, P & G seeks to have the delay excused on the grounds that it held a "good-faith" or "reasonable" belief that it was not liable for the damages caused by the leak.

Though an insured's failure to provide timely notice of an occurrence may sometimes be excused if it establishes, by admissible evidence, a "good-faith belief in nonliability," it does not appear that such relief is granted where, as here, the insured knows not only about the occurrence itself but also about the possibility of a claim against it. See *American Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 439 (2d Cir.1995) (awarding insurer summary judgment where, inter alia, insured refused to provide insurer with timely notice of "assertion of possible liability" against it); *State v. Ludlow's Sanitary Landfill,* *Inc.*, 50 F.Supp.2d 135, 138–40 (N.D.N.Y. 1999) (awarding insurer summary judgment where insured failed to provide insurer with timely notice even after receiving letter regarding its potential liability for cleanup costs); *SSBSS Realty Corp. v. Public Service Mut. Ins. Co.*, 253 A.D.2d 583, 677 N.Y.S.2d 136, 138 (1st Dep't 1998) ("At issue is not whether the insured believes he will ultimately be found liable for the injury, but whether he has a reasonable basis for a belief that no claim will be asserted against him.")

### Conclusion

Based on the above, it is recommended that the plaintiff's motion for partial summary judgment (Docket No. 9) be DENIED, and that the defendant's motion for summary judgment (Docket No. 12) be GRANTED and the complaint dismissed in its entirety.

Pursuant to 28 USC § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 USC § 636(b)(1), Fed.R.Civ.P. 72(b) and WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates*, 66 F.3d 566 (2d. Cir.1995); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir.1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See *Paterson–Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

March 31, 2000.