Crown Jewels Estate Jewelry, Inc. v Underwriters at Interest at Lloyd's London (2021 NY Slip Op 03110)





Crown Jewels Estate Jewelry, Inc. v Underwriters at Interest at Lloyd's London


2021 NY Slip Op 03110


Decided on May 13, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 13, 2021

Before: Renwick, J.P., Manzanet-Daniels, Kennedy, Shulman, JJ. 


Index No. 655939/17 Appeal No. 13833 Case No. 2020-04312 

[*1]Crown Jewels Estate Jewelry, Inc., Doing Business as Stephen Russell, Plaintiff-Appellant,
v
The Underwriters at Interest at Lloyd's London, etc., Defendant-Respondent.


Lipsius-Benhaim Law LLP, Kew Gardens (Ira S. Lipsius of counsel), for appellant.
Wade Clark Mulcahy LLP, New York (Dennis M. Wade of counsel), for respondent.



Appeal from order, Supreme Court, New York County (Barry R. Ostrager, J.), entered on or about March 13, 2020, which denied plaintiff's motion for summary judgment, deemed an appeal also from order, same court and Justice, entered on or about March 13, 2020, which granted defendant's motion for summary judgment dismissing the complaint (CPLR 5520[c]), and, so considered, both orders unanimously affirmed, without costs.
Plaintiff, a high-end jeweler in Manhattan, was insured under an all-risk, jewelers block policy issued by defendant. The policy excluded from coverage "[l]oss, damage or expense caused by or resulting from sabotage, theft, conversion or other act or omission of a dishonest character . . . on the part of any person to whom the Interest Insured may be delivered or entrusted by whomsoever for any purpose whatsoever . . . " (dishonest entrustment exclusion).
On Tuesday, March 21, 2017, plaintiff was contacted by one Paul Castellana, who represented that he worked for Sony Pictures International, was shooting a video with Jennifer Lopez, and wanted to borrow pieces of plaintiff's jewelry for the shoot, which was to be in Miami the coming weekend. Plaintiff and Castellana communicated via email, Castellana using a Sony Pictures International email address. After the two settled on five pieces of jewelry totaling $2.09 million, Castellana sent plaintiff a certificate of insurance for the items. He also gave plaintiff the contact information for someone who could confirm the authenticity of the certificate of insurance; the contact information matched the person's contact information on the insurance group's website. The person confirmed to plaintiff that Castellana was "a good client of his" whose "reputation in the industry [was] stellar." Plaintiff then gave the jewelry to an associate of Castellana's who had come to plaintiff's store to collect it. When Castellana failed to return the jewelry the following week, plaintiff contacted law enforcement, hired a private investigator, and filed a claim with defendant.
It turned out that Castellana was an alias for one James Sabatino, a member of the Gambino Organized Crime Family of La Cosa Nostra (United States v Sabatino, SD Fla, Case No. 16-20519-CR-JAL, Case Management/Electronic Case Filing [CM/ECF] Doc. No. 231, "Stipulated Factual Proffer," at ¶¶ 3, 30). While in federal prison in Miami, Sabatino managed to obtain several cell phones, which he used to create the Sony Pictures International email address and communicate with plaintiff by voice call and email (id. at ¶¶ 28-30). His co-conspirators then collected the jewelry and transported or sent it to others in south Florida or elsewhere for resale (id. at ¶¶ 32, 34). The jewelry at issue in this case was never recovered (id. at ¶ 32). Sabatino was only caught when federal prison officials went to his cell to search it and found him on the phone; a search of the phones themselves uncovered his scheme (id. at ¶ 40). Sabatino ultimately [*2]pleaded guilty in federal court to one count of conspiracy to violate the RICO Act and was sentenced to a term of 240 months in Florence ADMAX in Colorado (id., CM/ECF Doc Nos. 287 and 306, judgment and amended judgment, respectively).
Defendant, meanwhile, denied plaintiff's insurance claim, relying on the dishonest entrustment exclusion, and plaintiff commenced this action for breach of contract.
The plain language of the dishonest entrustment exclusion, by which we must be guided (see Westchester Fire Ins. Co. v Schorsch, 186 AD3d 132, 140 [1st Dept 2020]; J.P. Morgan Sec. Inc. v Vigilant Ins. Co., 126 AD3d 76, 83 [1st Dept 2015]), confirms that the exclusion applies to the present case: The loss of plaintiff's jewelry resulted from theft or an act of dishonest character on the part of the persons to whom the jewelry was entrusted. It is irrelevant to whom or for what purpose the jewelry was actually or intended to be entrusted (see Facet Indus. v Wright, 62 NY2d 769, 772 [1984]["entrustment is to be determined by the state of mind of the insured rather than that of the recipient"], citing Abrams v Great Am. Ins. Co., 269 NY 90 [1935], and David R. Balogh, Inc. v Pennsylvania Millers Mut. Fire Ins. Co., 307 F2d 894 [5th Cir 1962]; see also M.H. Lipiner & Son, Inc. v Hanover Ins. Co., 869 F2d 685 [2d Cir 1989]; Renaissance Art Invs., LLC v AXA Art Ins. Corp., 102 AD3d 604, 604-605 [1st Dept 2013], lv denied 21 NY3d 855 [2013], cert denied 571 US 1095 [2013]; Lexington Park Realty LLC v National Union Fire Ins. Co. of Pittsburgh, PA, 120 AD3d 413, 413-414 [1st Dept 2014]). To the extent Camera Mart v Lumbermens Mut. Cas. Co. (58 Misc 2d 448 [Civ Ct, NY County 1968], affd 64 Misc 2d 860 [App Term, 1st Dept 1969]) remains good law, it is distinguishable insofar as the dishonest entrustment exclusion at issue in that case was subject to the rule of ejusdem generis (see McKinney's Cons Laws of NY, Book 1, Statutes § 239[b]), unlike the dishonest entrustment exclusion in this case.
We have considered plaintiff's remaining arguments and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 13, 2021